388 N.W.2d 402 (1986)
Judith Ann BOGENHOLM, a minor, by Robert L. BOGENHOLM, her father, and natural guardian, and Judith Ann Bogenholm, individually, Appellants,
v.
John Estes HOUSE, Karen Ann Pitoscia, et al., Independent School District No. 709, Diane Williams, Respondents.
No. C5-85-2278.
Court of Appeals of Minnesota.
June 3, 1986.
Review Denied August 13, 1986.
Gerald W. Murphy, Murphy, Hansen & Robinson, Duluth, for Judith Ann Bogenholm.
Terry C. Hallenbeck, Brown, Andrew, Hallenbeck, Signorelli & Zallar, Duluth, for John Estes House.
Richard H. Krochock, Rider, Bennett, Egan & Arundel, Minneapolis, for Karen Ann Pitoscia, et al.
John D. Kelly, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, for Independent School District No. 709.
Robert H. Magie, III, Donovan, McCarthy, Crassweller & Magie, P.A., Duluth, for Diane Williams.
Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

OPINION
HUSPENI, Judge.
Appellants Judith and Robert Bogenholm seek review of the trial court's partial summary judgment issued pursuant to Minn.R. Civ.P. 54.02 in favor of respondent Diane *403 Williams. On appeal, the Bogenholms argue that the trial court erred in applying the doctrine of collateral estoppel to preclude them from litigating their claims against Williams. We affirm in part and reverse in part.

FACTS
This action arises out of an automobile collision that occurred on August 30, 1980, at 5 a.m. when twelve cheerleaders and one other student from Denfeld High School, Duluth, Minnesota, were riding in a van while "bannering" the homes of the school's football players. Judith Bogenholm, one of the cheerleaders injured in the collision and her father, Robert Bogenholm, brought this action against the drivers (cheerleader Karen Pitoscia and John House) for the negligent operation of their vehicles, and against the school district and the cheerleaders' faculty advisor (respondent Diane Williams) for negligent supervision of an authorized activity. Six of the other cheerleaders who were passengers in the van, including Robin Verhel, brought similar actions against the same defendants.
In November 1981, Verhel filed a certificate of readiness for trial. The defendants made a motion to strike the certificate of readiness and consolidate all seven cases. The motion was opposed by all the plaintiffs.
On December 10, 1981, at the hearing on the motion, the attorney representing Verhel stated that all the plaintiffs' attorneys had agreed the Verhel action should go ahead to trial. The plaintiffs argued that a consolidated trial would be too difficult to administer and too complex for a jury to follow. They argued that it would be more expeditious to try the Verhel action first because if Verhel prevailed against the defendants, the defendants would be bound by that judgment and the remaining plaintiffs could invoke collateral estoppel against them. The plaintiffs specifically stated that the converse would not be true.
On January 4, 1982, the trial court denied the defendants' motion for consolidation. In its memorandum accompanying the order, the trial court stated:
[I]t seems * * * that if the plaintiffs are willing to have the Robin Verhel case tried first, presumably as a test run of the facts, there appears * * * no reason to stand in the way of that procedure.
In addition, the trial court reasoned that a consolidated trial, even if it only dealt with the liability issue, would be difficult and cumbersome to administer in light of the fact that at least ten parties would have the right to present their cases and examine witnesses. The trial court also noted that some of the plaintiffs were not ready for trial and it did not believe that those who were ready should be delayed.
On January 13, 1982, the Bogenholms filed their certificate of readiness for trial. Subsequently, the defendants made a motion to consolidate only the Verhel and Bogenholm cases. At the hearing on the motion, the Bogenholms' attorney reiterated that it was unlikely that the other cases would be tried after the Verhel case. In an affidavit that Verhel's attorney submitted to the court requesting an award of attorney's fees for defending the defendants' motion, he stated that the basis of the trial court's previous order denying consolidation was that regardless of whether the other plaintiffs were ready for trial, "all plaintiffs had agreed that the Verhel matter should go forward as a test case."
On March 18, 1982, the trial court issued an order denying the second motion for consolidation. In its accompanying memorandum, the trial court explained: "Once the first of these many cases is tried, it may well be that the other cases will be resolved without trial."
Before the Verhel trial in May 1982, the plaintiffs entered into a formal agreement in which they agreed that the Verhel case would proceed to trial and they set up a procedure for dividing any recovered insurance proceeds amongst them. The agreement specifically states: "This Agreement is not in any way intended to affect or influence the presentation of evidence, theories *404 of liability, or trial of any of the undersigned injured parties' lawsuits."
In the Verhel trial, the jury found that each defendant was negligent and that each defendant's negligence was a direct cause of Verhel's injuries. The jury apportioned the causal negligence as follows: school district, 35%; the advisor, respondent Williams, 0%; House, 26%; Pitoscia, 39%. The school district, House and Pitoscia appealed to the Minnesota Supreme Court.
While the Verhel appeal was pending, the trial date in the Bogenholm action was set. On December 20, 1982, the trial court granted the school district's motion to stay the Bogenholm trial until the Minnesota Supreme Court issued its decision in the Verhel appeal.
On December 21, 1984, the supreme court in a 5-4 decision affirmed the trial court on all grounds in Verhel v. Independent School District No. 709, 359 N.W.2d 579 (Minn.1984). In particular, the supreme court found reconcilable the jury's verdict which had found all the defendants causally negligent, but apportioned no percentage of causal negligence to Williams. Id. at 592-93.
Subsequently, the Bogenholms made a motion for partial summary judgment based on collateral estoppel. The Bogenholms sought to bind all the defendants to the Verhel jury's findings on the issues of negligence and causation. However, the Bogenholms sought to litigate the apportionment of the defendants' causal negligence and damages. Williams also made a motion for an order granting her summary judgment.
On March 1, 1985, the trial court granted the Bogenholms' motion in part and granted summary judgment to Williams. The trial court ordered that "the matters of liability, causation and comparable fault are binding upon all parties pursuant to the doctrine of collateral estoppel." The trial court explained its order as follows:
There seems to be no argument between the parties but that Judith Bogenholm stands in privity with Robin Verhel, and that both parties were passengers in the Pitoscia vehicle. There seems to be no disagreement, further, that the issues are identical between the Verhel case and the Bogenholm matter. * * * [O]n two separate occasions, the plaintiff Bogenholm had the opportunity to litigate jointly with Verhel but chose not to do so. There was a final determination in the Verhel matter as to liability and causation. It seems to this Court that the plaintiffs at this point must either take the verdict in the Verhel matter as it is or retry the entire matter. Plaintiff cannot pick and choose the portions of the verdict they wish to use. Further, the Court cannot allow only the apportionment of negligence to be given to the jury in the above-entitled matter as it is necessary for them to have testimony as to negligence and causation to make an intelligent apportionment.
Subsequently, the trial court denied the Bogenholms' motion to reconsider its finding regarding the privity of the parties.
The Bogenholms seek review of the trial court's partial summary judgment, entered pursuant to Minn.R.Civ.P. 54.02, dismissing the Bogenholms' action against Williams.[1]

ISSUES
1. Did the trial court err in dismissing the Bogenholms' action against Williams on the basis of collateral estoppel?
2. Can the Bogenholms bind respondents to the Verhel jury's findings of negligence and causation but litigate the apportionment of respondents' causal negligence?

ANALYSIS

I.
The Bogenholms argue that the trial court erred in dismissing their action *405 against Williams on the basis of collateral estoppel. We agree.
Collateral estoppel may be appropriate if, among other things, "the estopped party was a party or in privity with a party to the prior adjudication." Ellis v. Minneapolis Commission on Civil Rights, 319 N.W.2d 702, 704 (Minn.1982) (quoting Victory Highway Village, Inc. v. Weaver, 480 F.Supp. 71, 74 (D.Minn.1979)). Whether a nonparty can be bound by a prior adjudication is usually a question of fact. Miller v. Northwestern National Insurance Co., 354 N.W.2d 58, 62 (Minn.Ct.App.1984). See also Vulcan, Inc. v. Fordees Corp., 658 F.2d 1106, 1109 (6th Cir.1981), cert. denied, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982). Our review is therefore limited to whether the trial court clearly erred in binding the Bogenholms to the result in Verhel. Minn.R.Civ.P. 52.01.
There is no prevailing definition of privity that can be automatically applied. Margo-Kraft Distributors, Inc. v. Minneapolis Gas Co., 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972).[2] The principal due process requirement in a civil action, however, is the opportunity for meaningful participation in an adversary hearing on the merits of one's claim. Pielemeier, Due Process Limitations on the Application of Collateral Estoppel Against Nonparties to Prior Litigation, 63 B.U.L.Rev. 383, 416 (1983).
A person may agree that the determination of issues in another action will be determinative of the issues in his or her case. Restatement (Second) of Judgments § 40, at 390 (1982). The Restatement (Second) directs that such an agreement should not be inferred except "upon the plainest circumstances." Id. § 40 comment b, at 391. See also Pielemeier, supra, at 390 n. 32 (there is little precedent for binding nonparties based on an implied agreement or implied consent); 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4453, at 454 (1981) [hereinafter cited as Federal Practice & Procedure] ("[g]reat care should be taken * * * to ensure that the circumstances actually warrant the implication that there was in fact an agreement to be bound").
Postponing a trial until after the trial in a related proceeding or acquiescing in a trial schedule to accommodate a related action does not constitute an agreement to be bound by the judgment in the action tried first. Restatement (Second) of Judgments § 40 comment a, at 390, reporter's note, at 392 (1982). At a minimum, the party precluded must reasonably anticipate preclusion. See Pielemeier, supra, at 415.
Here, the Bogenholms formally agreed that the Verhel case could proceed to trial and the Verhel action was often referred to as a "test case." In addition, the Bogenholms agreed to a procedure for dividing up insurance proceeds. There is no evidence, however, to indicate an agreement that the Bogenholms or the other plaintiffs would be bound by the result in Verhel. In fact, during at least one of the hearings on the consolidation motions, the plaintiffs specifically stated that they did not intend to be bound by the verdict in Verhel. The agreement the plaintiffs entered into prior to the Verhel trial explicitly stated that they did not intend the agreement to affect the trial of any of the plaintiffs. The plaintiffs' position throughout was that the Verhel trial would dispose of their claims because they hoped for a favorable verdict from which they would then invoke collateral estoppel against the defendants. The plaintiffs did not represent that they would be bound by a disfavorable judgment. Cf. Humphreys v. Tann, 487 F.2d 666, 671 (6th Cir.1973), cert. denied, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974) (while the attorney for the plaintiff participated in the pretrial proceedings of a prior action, no agreement was made that persons not *406 joined as plaintiffs in that action would be bound by its outcome).
A nonparty can also be bound to a prior adjudication when the nonparty so controls an action in advancing her own interests that the nonparty has had her day in court. Margo-Kraft, 294 Minn. at 281, 200 N.W.2d at 49. See also Montana v. United States, 440 U.S. 147, 154-55, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) ("although not a party, the United States plainly had a sufficient `laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel"). To have control of litigation a person must have an effective choice as to the legal theories to be advanced on behalf of the party and have control over the opportunity to obtain review. Restatement (Second) of Judgments § 39 comment c, at 384 (1982). It is not sufficient that the person merely contributed advice in support of the party, testified as a witness or participated in consolidated pretrial proceedings. See id.; 18 Federal Practice & Procedure § 4451, at 432-33. There is no evidence in the record from which we could conclude that the Bogenholms had such control in the Verhel action that they should be bound by the outcome in that action.
Further, we cannot bind the Bogenholms to the Verhel verdict on the basis that they waived their due process rights to a full and fair opportunity to litigate their claim. A waiver rationale justifies preclusion of a nonparty when the nonparty expressly agrees to be bound by the results of other litigation. Pielemeier, supra, at 402-03. As already discussed above, there is no evidence that the Bogenholms expressly agreed to be bound by the outcome in Verhel
The trial court suggests in its memorandum that because the Bogenholms did not join the Verhel action, they are now bound by that judgment. Williams also asserts this position. The Bogenholms, however, were not obligated to intervene in the trial pending Verhel action simply because they were interested in proving the same set of facts. See Chase National Bank v. City of Norwalk, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934); Staten Island Rapid Transit Operating Authority v. Interstate Commerce Commission, 718 F.2d 533, 543 (2nd Cir.1983).[3]
Three Minnesota cases on which Williams relies for support are not controlling here. In Pirrotta v. Independent School District No. 347, 381 N.W.2d 55 (Minn.Ct. App.1986), pet. for rev. granted, (Minn. Apr. 11, 1986), this court relied on an adequate representation theory to hold a carpentry teacher collaterally estopped from relitigating a seniority issue when a prior action between the school district and one of the two other carpentry teachers had already determined the issue. We consider that the relationship between the parties in Pirrotta and the circumstances in that case are unique, and thus the holding does not control the result in this case. Thill v. Modern Erecting Co., 284 Minn. 508, 170 N.W.2d 865 (1969), deals specifically with a spouse's derivative consortium claim. In Pacific Indemnity Co. v. Thompson-Yeager, Inc., 260 N.W.2d 548 (1977), the issue of nonparty collateral estoppel was not raised by the parties nor addressed by the court.
Williams also relies upon Shubeck v. Ondek, 167 N.J.Super. 121, 400 A.2d 544 (1979), and Waitkus v. Pomeroy, 31 Colo. App. 396, 506 P.2d 392 (1972), rev'd. on other grounds, 183 Colo. 344, 517 P.2d 396 (1973), to support its position that the trial court properly invoked collateral estoppel against the Bogenholms. We find neither case persuasive here. In Shubeck, Shubeck was an automobile passenger injured in a collision. She brought an action against the two drivers involved. In a prior action between the two drivers, one driver was found 100% negligent. Shubeck sought to bind the negligent driver to the prior verdict. The New Jersey court held that Shubeck could invoke collateral estoppel *407 against the negligent driver. Id. at 128, 400 A.2d at 548. The court further held that Shubeck in effect released the other driver from liability because the negligent driver had been found 100% at fault, and therefore there was no fault left to apportion to the other driver. Id. The court noted, however, that if Shubeck had "not made the motion, she clearly would be entitled to her day in court against both drivers." Id.
Likewise, in Waitkus, the plaintiff-passenger attempted to bind one of two drivers to the verdict in a prior action where that driver was found 100% negligent. The prior action was brought by another passenger against the two drivers. The Colorado Court of Appeals held that the negligent driver was bound by the prior verdict and that the plaintiff could not relitigate the nonnegligent driver's fault. As in Shubeck, the Colorado court here was implicitly attempting to avoid the illogical result of the two drivers' negligence totaling more than 100%. On further appeal by the defendant who was held solely liable, the Colorado Supreme Court reversed on other grounds without commenting on the nonparty estoppel approved by the court of appeals. Waitkus, 183 Colo. 344, 517 P.2d 396.[4]
The plaintiffs in Shubeck and Waitkus sought to invoke the doctrine of collateral estoppel against a defendant who had been found 100% causally negligent, while at the same time attempted to litigate the issue of negligence against a second defendant. In contrast to those plaintiffs, the Bogenholms are not attempting to bind only those defendants who were apportioned a percentage of fault in the Verhel action while at the same time litigating Williams' percentage of fault. Instead, the Bogenholms seek to relitigate the entire causal fault apportionment issue.
We recognize that some jurisdictions are expanding the application of collateral estoppel to nonparties. See Vulcan, 658 F.2d at 1111. Those cases, generally relying on concepts of "virtual representation" or "adequate representation," involve a combination of facts that support the conclusion that the nonparty had his or her vicarious day in court.[5] We hesitate to apply an expansive doctrine of collateral estoppel in this case, because the Bogenholms have not yet had even a vicarious day in court. See Note, Collateral Estoppel of Nonparties, 87 Harv.L.Rev. 1485, 1504 (1974). We conclude that the trial court clearly erred in finding that the Bogenholms were in privity with Verhel.

II.
We next address whether the Bogenholms can invoke collateral estoppel against all the defendants in Verhel with respect to that jury's findings on negligence and causation and be permitted to litigate only the apportionment of fault among those defendants. Our research has not revealed any case law that specifically addresses this issue. Generally a court should not allow the use of offensive collateral estoppel where the application of offensive estoppel would be unfair to a defendant.[6]Parklane Hosiery Co. v. *408 Shore, 439 U.S. 322, 331, 99 S.Ct. 645, 651-52, 58 L.Ed.2d 552 (1979).
We believe that allowing the Bogenholms to bind all defendants to the Verhel jury's findings of negligence and causation, but litigate the apportionment issue would be unfair to Williams and may lead to an inequitable and distorted result. The jury would undoubtedly need to hear evidence on the issues of negligence and causation in order to make a fair apportionment of causal fault. Because we have determined that the Verhel defendants cannot invoke the doctrine of collateral estoppel against the Bogenholms, the Bogenholms have a right to litigate the liability issues as to all defendants. Alternatively, the Bogenholms have a right to invoke the doctrine of collateral estoppel against all the Verhel defendants, binding them to the negligence, causation, and apportionment determinations of the Verhel jury. It would be improper, however, to permit the Bogenholms to bind the defendants to those Verhel jury determinations which are considered favorable and litigate only the determinations considered unfavorable.

DECISION
The trial court erred in dismissing the Bogenholms' action against Williams. The Bogenholms cannot bind the defendants to only the negligence and causation determinations in the Verhel trial. The Bogenholms can either invoke collateral estoppel with respect to all the negligence, causation, and apportionment determinations of the Verhel jury or they can litigate the entire liability issue against all the defendants.
Affirmed in part, reversed in part.
NOTES
[1] According to appellants' brief, all of the respondents except Williams have elected not to contest liability any further.
[2] The Restatement (Second) of Judgments has actually abandoned the use of the term "privity" and instead categorizes nonparties bound by earlier litigation in terms of their specific relationships to the parties in the earlier litigation. Restatement (Second) of Judgments introduction, at 13-14 (1982).
[3] We note that the failure to intervene may be relied upon as an element of nonparty preclusion if additional elements such as participation or representation are present. See 18 Federal Practice & Procedure § 4452, at 450-51.
[4] The plaintiff in Waitkus had received a satisfactory recovery against the other defendant and thus did not appeal the court of appeals' estoppel ruling against him. Note, Collateral Estoppel of Nonparties, 87 Harv.L.Rev. 1485, 1494 n. 61 (1974).
[5] See, e.g., Cauefield v. Fidelity & Casualty Co. of New York, 378 F.2d 876 (5th Cir.), cert. denied, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967) (the plaintiffs' claim of cemetery desecration was identical to the claim litigated in the prior action, plaintiffs in both actions were represented by the same attorneys, plaintiffs in second action actively participated as witnesses in the first trial, and the court expressly confined its holding to the unusual facts of the case); Johnson v. Nationwide Business Forms, Inc., 103 Ill.App.3d 631, 59 Ill.Dec. 339, 431 N.E.2d 1096 (1981) (prior federal court plaintiff and subsequent state court plaintiff had identical interests and were represented by the same attorneys, and the state court plaintiff's failure to join the federal action was viewed as an attempt to avoid the preclusive affect of an adverse ruling in federal court). See generally 18 Federal Practice & Procedure § 4457, at 498.
[6] Offensive collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating an issue which the defendant previously litigated and lost against another plaintiff. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 651-52, 58 L.Ed.2d 552 (1979).