**John C. GREEN, Appellant (C9–91–2213),**

**Lawrence Johnson, individually and as father and natural guardian of Shane Johnson, Respondent (CX–91–2253),**

**Drew Johnson, et al., Plaintiffs (C4–91–2264),**

**Jason Studer, Appellant (C4–91–2264),**

**v.**

**CITY OF COON RAPIDS, Respondent (C9–91–2213, C4–91–2264), Appellant (CX–91–2253),**

**Tom Herbst, Respondent (C9–91–2213, C4–91–2264), Defendant (CX–91–2253).**

**Nos. C9–91–2213, CX–91–2253 and C4–91–2264.**

Court of Appeals of Minnesota.

May 12, 1992.

Review Denied June 30, 1992.

Kirk W. Reilly, O'Connor & Hannan, Minneapolis, for John C. Green.

Anne M. Meredith–Will, Minneapolis, for Jason Studer.

Diana Young Morrissey, Keith A. Dotseth, Faegre & Benson, Minneapolis, for City of Coon Rapids.

Douglas E. Schmidt, Wilbur W. Fluegel, Sieben, Gross, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for Brian Armstrong, et al., amicus curiae.

Considered and decided by HARTEN, P.J., and CRIPPEN and AMUNDSON, JJ.

## OPINION

CRIPPEN, Judge.

Appellant John Green and a number of other plaintiffs claim they were injured from exposure to nitrogen dioxide fumes at the Joseph Cook Memorial Ice Arena between December 1986 and February 1987. Suits were commenced against respondents City of Coon Rapids and the arena's manager, Tom Herbst, for negligently allowing unlawful emissions from the engine of an ice-resurfacing machine.

The trial court held a jury trial on appellant's suit in July 1991. At trial, the jury found the city was negligent but that its negligence was not a direct cause of Green's injuries and Green suffered no damages. The court denied post-trial motions of both parties.

Prior to Green's trial, a number of plaintiffs moved the trial court to try all claims in a class action. The court denied the motion, reasoning that "establishing a violation of the regulations about air quality testing is 'time specific': such proof would have to be done in relation to different, separate periods of time." The court stated that the question of whether the city's negligence caused a plaintiff's injuries required examination of arena conditions on the day the claimant's injuries allegedly occurred. The court concluded that the "issue of causation is an intensely factual inquiry and can only be done on a day-by-day, event-by-event basis (and probably only for one individual claimant at a time)." The court also noted that because the nitrogen dioxide gas seemed to be more concentrated around the ice surface than in the stands, there could "be a difference in causation between two otherwise similar claimants who were at the Arena for the same event, depending upon their respective distances from the ice surface."

After the trial court denied the motion to proceed as a class action, various plaintiffs brought a motion to consolidate their cases with the Green trial. The trial court denied the motion, citing as support the order denying the motion to proceed as a class action.[1]

Shortly after Green's trial, plaintiffs Lawrence Johnson and Jason Studer filed motions for partial summary judgment, alleging that the city should be collaterally estopped from contesting its negligence in their upcoming trials. The trial court granted the motion of Lawrence Johnson, who was at the arena on the same night as Green, but denied the motion of Studer, who claimed exposure on another date. Studer and the city filed petitions seeking discretionary appellate review. This court granted the petitions for discretionary review and consolidated the Green appeal with those of Studer and the city.

Appellant Green argues that the trial court erred in excluding various items of evidence submitted to support his claim. He further argues that the trial court erred in denying the plaintiffs' joint motion to consolidate their cases. Johnson and Studer argue that the finding of negligence in *Green* collaterally estops the city from relitigating its negligence in subsequent cases.

## FACTS

The City of Coon Rapids operates the Joseph Cook Memorial Ice Arena. The city

---

**1.** We note that Judge Daniel Kammeyer wrote the order and memorandum denying the motion to proceed as a class action and that Judge Stephen L. Muehlberg wrote the order and memorandum denying the motion to consolidate. The remainder of the decisions in this case were rendered by Judge Edward W. Bearse.

maintains the arena's ice surface by using a Zamboni ice-resurfacing machine.

From December 1986 to February 1987, a number of persons using arena facilities, including appellant Green, allegedly were exposed to nitrogen dioxide gas emitted from the Zamboni's engine exhaust. Many of these individuals sued the city. The plaintiffs claim to have suffered lung injuries as a result of exposure to the gas emission. They claim the city caused the exposure by allowing the use of a poorly maintained Zamboni machine in an inadequately ventilated area.

At the Green trial, the jury heard evidence that the ventilation system of the arena consisted of two louvered air-intake vents at the west end of the arena, together with two large blower fans at the east end. The fans and vents worked in conjunction to exhaust internal combustion gases from inside the arena. In 1984, Tom Herbst, the arena manager, was instructed to seal the vents. Herbst insulated and sealed the vents. From 1984 to 1987, the vents remained sealed and the fans remained off during the winter months.

To comply with Minnesota Department of Health air-quality regulations, the arena staff periodically tested the levels of nitrogen dioxide. The test equipment was stored in boxes in Herbst's office. Herbst testified that the boxes were stamped with an expiration date of September 1982. Herbst stated that to the best of his knowledge all tests conducted through February 12, 1987, were performed with equipment contained in boxes that were stamped with the 1982 expiration dates.

On the night of February 12, 1987, Green participated in a hockey game for Coon Rapids High School. Green testified that during the game he had trouble breathing and experienced a dryness and a chemical taste in his mouth. He said he experienced these symptoms throughout the night and into the next morning. He testified that doctors diagnosed him as suffering from asthma. He further stated that since the exposure to the nitrogen dioxide, he has experienced periodic breathing difficulty, especially when engaging in strenuous physical activity, and that he needs to use an inhaler before exercising.

The trial court made a number of rulings on the parties' motions in limine. Green sought to introduce an article from the December 1, 1989, issue of the *Journal of the American Medical Association.* The article detailed a study concerning "an outbreak of nitrogen dioxide-induced respiratory illness among players and spectators of two high-school hockey games." The trial court refused to admit the article into evidence.

The trial court also excluded evidence of individuals allegedly exposed to nitrogen dioxide on dates other than February 12, 1987, the date Green was exposed. The court limited evidence of other injured persons to those who were present on February 12, 1987, and to their observations and symptoms on that evening only.

Green also offered evidence of a telephone conversation that occurred between Bill Runkel, the manager at the nearby Anoka arena, and Herbst on February 13, 1987, one day after Green's exposure. During the conversation, Runkel allegedly told Herbst that Anoka hockey players were suffering from symptoms that began during the game at the Coon Rapids arena on the night before. The court excluded the evidence as hearsay.

Green additionally offered evidence of arena atmospheric testing on February 19, 1987, one week after Green allegedly was exposed to high levels of nitrogen dioxide. Using new testing equipment, the arena staff found on this occasion that the nitrogen dioxide reached levels of four parts per million, nearly eight times the legal limit. The trial court excluded the evidence as a subsequent remedial measure under Minnesota Rule of Evidence 407 and also stated that the evidence lacked relevance and might be prejudicial and confusing to the jury.

Finally, both parties offered testimony of experts concerning the permanency of Green's injuries. The trial court did not allow Green's expert toxicologist to testify as to the permanency of Green's injury, concluding that the testimony lacked prop-

er foundation. The court found that the city's expert had sufficient foundation to testify as to permanency.

After the trial, Lawrence Johnson and Jason Studer, two other claimants against the city, filed motions for partial summary judgment, claiming that the city should be collaterally estopped from contesting its negligence in their upcoming trials. The trial court granted Johnson's motion, concluding that because Johnson was present at the arena on the same night as Green, there was no reason to relitigate the issue of negligence. The court denied Studer's motion, however, concluding that because Studer was not present in the arena on February 12, the city should not be bound by the finding of negligence in Green's trial. We previously granted discretionary review on contentions arising out of these motions.[2]

## ISSUES

1. Did the trial court err in declining to consolidate a number of lawsuits brought by persons who allegedly suffered exposure to nitrogen dioxide in the arena?

2. Did the trial court err in excluding various items of evidence offered by appellant Green?

3. Did the trial court err in ruling that the city could not litigate the issue of its negligence against respondent Johnson, but could litigate that issue against appellant Studer?

## ANALYSIS

### Standard of Review

▮▮▮ The trial court has broad discretion in deciding whether to grant a motion for a new trial. *Benson v. Rostad*, 384 N.W.2d 190, 194 (Minn.App.1986). The court should not grant a new trial unless the conflict between the verdict and the

preponderance of the evidence suggests that the jury "failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice." *LaValle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977). The decision of whether to grant a new trial "rests solely within the discretion of the trial court and will be reversed on appeal only for a clear abuse of that discretion." *Benson*, 384 N.W.2d at 194.

## I.

▮▮▮ Green claims that the trial court erred in declining to consolidate a number of lawsuits brought by persons who allegedly suffered exposure to nitrogen dioxide in the arena. Minn.R.Civ.P. 42.01 permits consolidation when pending actions involve "a common question of law or fact." Whether to consolidate cases rests within the discretion of the trial court. *Fitzer v. Bloom*, 253 N.W.2d 395, 401–02 (Minn. 1977). The court "must balance convenience against the possibility of prejudice." *Schacter v. Richter*, 271 Minn. 87, 92–93, 135 N.W.2d 66, 70 (1965).

In denying the plaintiffs' motion to consolidate, the trial court stated the decision rested upon the same grounds as those cited by the trial court in denying the motion to proceed as a class. The court found it crucial that evidence showed conditions at the arena varied from day to day and from event to event. The trial court thus concluded that whether the city's negligence caused harm on any given day could be resolved only by considering the circumstances surrounding the day on which a claimant visited the arena.

The trial court's analysis does not demonstrate an abuse of discretion. The circumstances in which these cases arose differ from a single, mass accident that causes harm to a number of persons. Al-

---

**2.** Respondent Johnson and appellant Studer also attempt to raise an additional argument in this review. They argue that the statutory municipal liability limitation of $600,000 should be doubled in this case because the city's negligence arose out of a release of a hazardous substance. By notice of review in *Green*, the city argues that its liability is limited to $600,000 pursuant to Minn.Stat. § 466.04 (1986). We decline to address these arguments as improvident and beyond our scope of review under Rules 103.04 and 106 of the Minnesota Rules of Civil Appellate Procedure. Because no verdicts have been awarded in these cases, to address these arguments would be tantamount to issuing an advisory opinion.

though there are a number of nitrogen dioxide exposure cases pending, the alleged exposures occurred on different dates. The case also differs from one in which all claimants' injuries are traced to a series of many exposures. The case is unique because a group of claimants allege similar kinds of exposures, but on a number of individual occasions. The numerous claims, the differing conditions associated with each exposure, and the great quantity of evidence specific to each individual plaintiff could be unduly confusing in a single trial. The trial court did not err.

## II.

■ Green argues that the trial court committed a number of errors in refusing to admit evidence. These trial court decisions also rest within its broad discretion. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990). In addition, the aggrieved party must demonstrate prejudicial error to be entitled to a new trial on grounds of improper evidentiary rulings. *Id.*

Green's primary contention is aimed at the trial court's decision to exclude evidence of various individuals' alleged exposure to nitrogen dioxide emissions at the arena on dates other than February 12, 1987. Given the unique circumstances of this case, the trial court acted within its discretion by limiting the evidence to the occasion Green was present at the arena.

■ The trial court enjoys wide latitude in determining whether evidence is relevant. *Raleigh v. Independent Sch. Dist. No. 625,* 275 N.W.2d 572, 576 (Minn.1978). Even when evidence has some probative value, if its introduction may confuse or mislead the jury, the trial judge has discretion to exclude it. *In re Commodore Hotel Fire & Explosion Cases,* 324 N.W.2d 245, 249 (Minn.1982).

■ The trial court reasoned that excluding evidence of injuries and symptoms suffered on days other than the day of Green's exposure was consistent with the court's

earlier orders denying plaintiffs' attempts to proceed as a class and to consolidate the cases. The court observed that evidence on the possibility of ever-varying atmospheric conditions in the arena taints evidence of exposure on occasions other than the one when the claimant actually was present at the facility. The court did not err in wariness of the danger the jury might improperly conclude that if harmful conditions existed on one day, they must have existed on the day on which the claimant was present.

Green also claims the trial court erred in excluding from evidence results from atmospheric tests that the arena staff conducted on February 19, 1987, one week after Green's exposure. Green emphasizes that the results are important because they were the first obtained with up-to-date testing equipment. The trial court acted within its discretion in excluding the test results on relevancy grounds. The court reasoned that the results were not sufficiently probative because they were obtained a full week after Green's exposure. Evidence showed varying conditions in the arena and the court thus concluded that the conditions on February 19 could have differed significantly from those that existed on February 12.

Appellant Green argues that because the fans were on and the vents open when the tests were conducted on February 19, the nitrogen dioxide levels would have been lower on that date and show that levels were exceedingly high on February 12. While Green's theory has initial appeal, the court did not err in following its reasoning employed throughout this case. The record provides no evidence that conditions on February 12 could be measured on February 19. We also note that the trial court found the test results cumulative, suggesting that exclusion of the evidence was nonprejudicial. Expert testimony had indicated that nitrogen dioxide levels in the arena on February 12 were exceedingly high.[3]

---

3. Because the trial court's relevancy premise has merit, we need not examine its more troublesome conclusion that evidence of circum-

stances on February 19 wrongfully showed a subsequent remedial measure under Minn. R.Evid. 407.

■ Green further maintains that the trial court erred in excluding from evidence an article published in the *Journal of the American Medical Association.* The article featured a study of hockey players who had been exposed to nitrogen dioxide at the Coon Rapids arena. The court acted within permissible discretion in excluding the article. The court reasoned that the danger of confusion and prejudice outweighed the article's probative value. The jury would have been confronted by potentially confusing tables and graphs without the benefit of meaningful cross-examination. The exclusion is consistent with the court's other lawful rulings limiting evidence to conditions in the arena on the evening on which Green was present.

Green finally argues that the trial court erred in excluding a telephone conversation between members of the arena's management and in excluding testimony by his expert toxicologist, while allowing similar testimony by the city's expert. These trial court decisions were supported by proper considerations and were within the parameters of broad trial court discretion.

### III.

■ Pursuant to notice of review, the city argues that the finding of negligence by the jury in this case should not preclude the city from litigating the negligence issue in any subsequent case. Collateral estoppel precludes relitigation of issues actually litigated and determined in a prior action and essential to the resulting judgment. *Hauser v. Mealey,* 263 N.W.2d 803, 806 (Minn.1978). Whether collateral estoppel is available is a mixed question of law and fact, and the trial court's determination does not bind this court. *Regents of the Univ. of Minn. v. Medical Inc.,* 382 N.W.2d 201, 207 (Minn.App.1986), *pet. for rev. denied* (Minn. Apr. 18, 1986), *cert. denied,* 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986). Once the reviewing court determines that collateral estoppel is available, the decision to apply collateral estoppel is left to the trial court's discretion. *Id.* The trial court's decision will be reversed only upon a determination that the court abused its discretion. *Saudi Am.*

*Bank v. Azhari,* 460 N.W.2d 90, 92 (Minn. App.1990).

■ Collateral estoppel is available where (1) the issues are identical to those in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party in the previous action; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issues. *Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982) (quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979)). In deciding whether to apply collateral estoppel, the focus is on whether application would work an injustice on the party to be estopped. *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 613–14 (Minn.1988).

■ Offensive collateral estoppel arises where a plaintiff seeks to estop a defendant from relitigating an issue that the defendant previously litigated and lost against another plaintiff. *Bogenholm by Bogenholm v. House,* 388 N.W.2d 402, 407–08 n. 6 (Minn.App.1986), *pet. for rev. denied* (Minn. Aug. 13, 1986). The use of offensive collateral estoppel is not permitted where the application of the doctrine would be unfair to a defendant. *Id.* at 407; *see Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651–52, 58 L.Ed.2d 552 (1979). Collateral estoppel should not be applied "indiscriminately to tort cases where the factual circumstances in each case differ and no hard and fast legal standard has emerged from the developing case law." *Deviner v. Electrolux Motor, AB,* 844 F.2d 769, 774 (11th Cir. 1988).

■ The trial court's denial of Studer's motion is consistent with sound reason and with the pretrial rulings and the evidentiary rulings in this case. Those rulings were premised on the observation that because conditions within the arena could vary widely with time, evidence of exposure at one time is not strong evidence of exposure at another time. The trial court could properly decide that precluding the city

from litigating its negligence against Studer would be unfair and unjust. Studer alleges injury on a different day and under possibly different conditions.

The city argues that collateral estoppel should not prevent it from litigating its negligence against Johnson, who was present at the arena on the same night as Green. The city reasons that because the trial court allowed the deposition testimony of Green's expert, without an opportunity for meaningful cross-examination, the negligence finding was tainted. We note that Minn.R.Civ.P. 32.01 allows the trial court to accept deposition testimony. The court did not abuse its discretion in allowing the testimony. We further note that abundant evidence of the city's negligence existed. Johnson visited the arena on the same night that Green was present. Consequently, the trial court properly held that the city's negligence in Green's case should control in the Johnson case.

### DECISION.

The trial court did not abuse its discretion in denying the claimants' motion to consolidate where the claimants' alleged injuries were attributed to different circumstances in the arena on different occasions. The court acted within its discretion in making evidentiary rulings that limited evidence in Green's case to the conditions that existed in the arena on the night when he played hockey. The court did not err in precluding the city from relitigating its negligence against a claimant who was present in the arena on the same night as Green, but allowing the city to litigate that issue against a claimant present on a different occasion.

Affirmed.