Elaine PARKER, et al., Respondents,

v.

MVBA HARVESTORE SYSTEMS, et al., Appellants (C4–92–704), Defendants (C8–92–706), Respondents (C7–92–731),

A.O. Smith Harvestore Products, Inc., Respondent (C4–92-704, C7–92–731), Appellant (C8–92–706),

A.O. Smith Corporation, Respondent (C4–92–704), Appellant (C7–92–731).

Nos. C4–92–704, C8–92–706 and C7–92–731.

Court of Appeals of Minnesota.

Nov. 3, 1992.

David F. Herr, R. Lawrence Purdy, Mary R. Vasaly, Wayne S. Moskowitz, Maslon,

Edelman, Borman & Brand, Minneapolis, for Elaine Parker, et al.

John M. Sheran, Farrish, Johnson & Maschka, Mankato, for MVBA Harvestore Systems, et al.

Frederick W. Morris, Blake Shepard, Jr., Leonard, Street and Deinard, Minneapolis, for A.O. Smith Harvestore Products, Inc.,

Frank J. Walz, Best & Flanagan, Minneapolis, Donald E. Egan, David K. Schmitt, Jaye Quadrozzi, Katten, Muchin & Zavis, Chicago, for A.O. Smith Corp.

Considered and decided by DAVIES, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

DAVIES, Judge.

This action in fraud and breach of express warranty stems from respondents' purchase of four silos. Appellants challenge the district court's pretrial order collaterally estopping them from contesting the falsity of representations of the oxygen-limiting nature of the silos. The district court granted appellants' motion for a continuance pending this court's discretionary review. We reverse and remand.

## FACTS

Between 1974 and 1979, Donald Parker, owner/operator of a dairy farm near Plainview, purchased four Harvestore silos manufactured and marketed by appellant A.O. Smith Harvestore Products, Inc. ("AOSHPI"). AOSHPI is a wholly-owned subsidiary of appellant A.O. Smith Corporation ("Smith"). Parker purchased the silos through an independent dealer, appellant MVBA Harvestore Systems ("MVBA"). Thomas Manning, now deceased, was the MVBA representative dealing with Parker. Respondents Elaine and Russell Parker are Donald Parker's widow and son.

Harvestore silos are substantially more expensive than conventional silos. Within the industry, they are generically classified as "oxygen-limiting" silos. Advertised as "oxygen free" or "oxygen limiting," these silos are constructed of glass-coated steel and permit top loading/bottom unloading.

More significantly, they are equipped with a patented breather bag system designed to limit the entry of oxygen—the great spoiler of stored feed.

In 1985, respondents sued AOSHPI, Smith, and MVBA, alleging negligent design, manufacture, installation, and repairs; strict products liability; violation of the consumer protection statutes; breach of express and implied warranties; and common law fraud. On July 28, 1988, the district court granted partial summary judgment in favor of appellants on the following claims: negligence, strict liability, the consumer protection statutes, and on respondents' attempt to pierce Smith's corporate veil. On July 18, 1989, the district court also dismissed respondents' breach of implied warranty claim. This left the fraud claim.

On January 29, 1992, respondents filed a motion asking the court to estop AOSHPI "from re-litigating the issue of its fraudulent conduct in the marketing of its Harvestore silos." On March 13, 1992, the trial court issued a carefully limited order, applying estoppel to just one element of the fraud claim. The order precluded AOSHPI from contesting the falsity of "representations regarding the 'oxygen-limiting' or 'oxygen-free' nature of the Harvestore silos."

On April 1, 1992, the district court denied appellants' motion to reconsider. Further, although respondents' motion had been directed only at AOSHPI, the court modified its order so that its carefully limited collateral estoppel would apply to *all* appellants:

> [S]olely as to the question of the truth or falsity of the representations made by AOSHPI and passed along through AOSHPI advertising materials and through the agency of MVBA employees, collateral estoppel must apply equally to AOSHPI, A.O. Smith, and to MVBA.

In its April 1 order, the district court also granted appellants' motion for a continuance to permit expedited appellate review. On May 5, 1992, this court granted appellants' petition for discretionary interlocutory review.

## ISSUES

I. Did the trial court err in holding that the elements necessary for application of collateral estoppel had been met?

II. Did the trial court abuse its discretion in applying collateral estoppel?

## ANALYSIS

### I.

■ Whether a trial court erred in its application of issue preclusion is a mixed question of fact and law subject to de novo review. *Green v. City of Coon Rapids,* 485 N.W.2d 712, 718 (Minn.App.1992), *pet. for rev. denied* (Minn. June 30, 1992).

■ Collateral estoppel is appropriate where:

"(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue."

*Willems v. Commissioner of Pub. Safety,* 333 N.W.2d 619, 621 (Minn.1983) (quoting *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, 74 (D.Minn.1979)).

■ A court cannot rely on a prior judgment as the basis for applying collateral estoppel if that judgment might have been decided on one or more of several grounds and it does not explicitly state which one(s) it relied on. *Hauser v. Mealey,* 263 N.W.2d 803, 808–09 (Minn.1978).

■ Issue preclusion
is to be allowed with caution, and it must rest upon a more solid basis than mere speculation as to what was actually adjudicated in the prior action.

*Brooks Realty, Inc. v. Aetna Ins. Co.,* 268 Minn. 122, 125, 128 N.W.2d 151, 154 (1964) (quoting *Wolfson v. Northern States Mgmt. Co.,* 221 Minn. 474, 479, 22 N.W.2d 545, 548 (1946)). The law is clear that the party moving for issue preclusion bears the burden of establishing that the issue was necessarily determined by the prior verdict. *Id.* at 125, 128 N.W.2d at 153.

Where the trial court or jury failed to make a specific finding that the relevant issue was actually litigated:

[T]he first step in resolving uncertainty as to the identity of the issue actually decided lies in painstaking examination of the *record* of the prior action.

18 Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction* § 4420 (1981) (emphasis added).

Respondents brought the following cases to the court's attention: *Estate of Korf v. A.O. Smith Harvestore Products,* 917 F.2d 480 (10th Cir.1990); *Agristor Leasing v. A.O. Smith Harvestore Products,* 869 F.2d 264 (6th Cir.1989); *Kronebusch v. MVBA Harvestore System,* No. C7–85–46952 (Minn.Dist.Ct. June 10, 1991), *aff'd,* 488 N.W.2d 490 (Minn.App.1992); *Lollar v. A.O. Smith Harvestore Products,* 795 S.W.2d 441 (Mo.App.1990); *New York v. A.O. Smith Harvestore Products,* No. 6973–91 (N.Y.Sup.Ct. Oct. 30, 1991); *First Nat'l Bank of Louisville v. Brooks Farms,* 821 S.W.2d 925 (Tenn.1991).

Of all these decisions, only *Lollar* meets all the elements necessary for application of collateral estoppel. Each of the others is defective in some way.

In *Kronebusch* and *First Nat'l,* for example, the special verdict forms left unanswered which of a variety of representations the respective juries found to be false. In *Kronebusch,* the jury answered "yes" to the following open-ended question:

Were *any* false representation(s) of any existing material fact(s) respecting the design of the Harvestore system for animal feed storage made?

(Emphasis added.)

*Agristor* is, likewise, an inappropriate decision on which to base collateral estoppel. There, the Sixth Circuit affirmed a verdict for plaintiffs who sued AOSHPI for fraud, negligent and commercial representation, and strict liability. *Agristor Leasing,* 869 F.2d at 265. Respondents provided nothing from the trial court record indicating conclusively that the fact-finder had adjudicated the issue of misrepresentation with re-

spect to the Harvestore's oxygen-limiting capacity.

Similarly, in *Korf*, although the trial court found against AOSHPI on a fraud claim, respondent provided no documentation regarding the precise representation found to be false.

As for the New York consent decree, it does not constitute an adjudication on the merits and cannot serve as a basis for collateral estoppel. Although that agreement enjoins AOSHPI from "[a]dvertising or representing that Harvestore structures are 'oxygen free,'" the order does not contain any findings of fact or conclusions of law. Moreover, in the order AOSHPI specifically denied any wrongdoing and stated that it consented to the decree only to avoid the costs and disruption of litigation. *New York v. AOSHPI*, slip op. at 1.

█ It is indisputable, however, that the *Lollar* jury specifically reached the issue of misrepresentation about the oxygen-limiting nature of the silos. In its opinion, the Missouri Court of Appeals reproduces the trial court's jury instructions:

INSTRUCTION NO. 6

\*　　\*　　\*　　\*　　\*　　\*

AOSHPI represented to Plaintiff through its sales materials that the Harvestore systems were oxygen limiting, intending that Plaintiff rely upon such representation.

Second, the representation was false.

*Lollar*, 795 S.W.2d at 446–47. In its April 1 memorandum, the district court said, "*Lollar* is a case where a special verdict focused on the 'oxygen-limiting' nature of the silos."

Nonetheless, *Lollar* cannot serve as the sole basis for the application of collateral estoppel in this case. In its March 1992 order, the district court did not make *Lollar* alone the basis for its decision. Instead, it said that "the recent trend has shown more and more jury verdicts" against AOSHPI. Again, in its April 1 order rejecting appellants' motion to reconsider, the court did not rely solely on *Lollar*, instead reiterating:

In reaching a decision here, this Court has given great weight to the '*recent trend*' of plaintiffs' verdicts. While this may beg the question as to when (after how many favorable verdicts) collateral estoppel can be invoked, it seems to the Court that at some point fairness and judicial economy require that it be invoked.

(Emphasis added.)

Furthermore, appellants assert that Harvestore silos are manufactured in different heights and diameters, which they claim affects a given silo's oxygen-limiting capacity. This claim has not been clearly litigated and respondents did not show that *Lollar* involved the very same model as in this case.[1]

---

1. We have another nagging concern, the issue litigated in *Lollar* might not be identical to that presented in this case. Magistrate Judge Charles Binder said in *Mohr v. Smith*, No. 88–CV–10043–BC, slip op. at 9–10, 1992 WL 392600 (E.D.Mich. March 24, 1992):

In this case, the Mohrs assert that the representations were made by Jack Kronz, a Michigan Glass representative, and in *Lollar*, a different representative associated with a different dealer made the alleged representations. As a result, while possibly similar in overall subject matter, the representations made to Lollar and to the Mohrs were undoubtedly different in content and context. In addition, the alleged representations in *Lollar* were made in 1981, while the alleged representations in this case were made no later than 1979. Thus, while none of these dissimilarities are enough alone to foreclose the preclusive effect of *Lollar*, I suggest that from their combination, it is clear that the jury in *Lollar*

did not decide and was not presented with fraud issues identical to those present in this case.

Similarly, in *Rufenacht v. Iowa Beef Processors, Inc.*, 656 F.2d 198, 203 (5th Cir.1981), in overruling the trial court's application of offensive collateral estoppel, the United States Court of Appeals notes that the fact that the defendant acted in a certain way in one transaction with one party "does not necessarily dictate" that he acted the same way in a later transaction with another party.

This case differs from *Lollar* in that it involves a different representative, working for a different dealer, in a different state, at different times. Therefore, the issues in *Lollar* and in this case are not identical, although the district judge here tried with admirable perspicacity to limit his order to the common element.

To identify a case on remand, or to construct a case to serve in the future as a basis for

## II.

■ Were we to determine that the trial court expressly relied on a prior decision squarely meeting all the elements of collateral estoppel, this court would then have to analyze whether the trial court abused its discretion in applying that doctrine. *Green,* 485 N.W.2d at 718. Although trial courts have broad discretion in determining whether to apply collateral estoppel:

Allowing offensive collateral estoppel may * * * be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.

*Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

In this case, appellants have cited cases, seeming to be inconsistent in result, which they claim render collateral estoppel so unfair as to represent abuse of discretion. Because of our determination that the elements of collateral estoppel were not met, it is not necessary to reach this issue.

## DECISION

The district court improperly granted respondents' motion for collateral estoppel since all elements required for application of that doctrine were not met.

Reversed and remanded.

collateral estoppel, it may be necessary to establish that these differences do not exist or are without relevance.

Further, the parties should note that the order in this case granting partial summary judgment, although reversed, gives appropriate notice for an award of attorney fees under *Uselman v. Uselman,* 464 N.W.2d 130, 143 (Minn.1990), if the claimed differences do not exist or are without relevance.