## MARGO-KRAFT DISTRIBUTORS, INC. v.
## MINNEAPOLIS GAS COMPANY AND ANOTHER.

200 N. W. 2d 45.

August 11, 1972—No. 43249.

*Hall, Smith, Juster, Feikema & Haskvitz* and *Ronald L. Haskvitz*, for appellant.

*Meagher, Geer, Markham & Anderson, Mary Jeanne Coyne,* and *O. C. Adamson II,* for respondent Minneapolis Gas Company.

*Douglass, Bell, Donlin, Schultz & Peterson, Paul Donlin,* and *Mark Nolan,* for respondent A. M. Hubbard Plumbing & Heating, Inc.

Heard before Knutson, C. J., and Rogosheske, Peterson, and Nelson, JJ.

PETERSON, JUSTICE.

The sole issue on this appeal from summary judgment for defendants is whether the doctrine of collateral estoppel bars plaintiff's negligence action against defendants. The issue, more specifically, is whether or not plaintiff was either a party or privy to the prior action on which defendants based their defensive claim of collateral estoppel. The trial court, after a full evidentiary hearing, ruled that defendants should have judgment on either ground.

The present lawsuit, as well as the prior lawsuit, arose out of a fire on October 12, 1960, that destroyed a building which plaintiff, Margo-Kraft Distributors, Inc., occupied as a warehouse and office facility under a lease and buy-back arrangement with the owners, Raymond N. Beim and E. R. Conry. Margo-Kraft, original owners of the building site, sold the property to Beim and Conry who, as part of the financing arrangement, constructed the building according to Margo-Kraft's specifications, to be thereafter leased to Margo-Kraft subject to a purchase option. The lease provided that Margo-Kraft was not to be liable for fire damage to the building caused by its negligence and it paid the premium for fire and extended coverage insurance in favor of the owners; Margo-Kraft purchased its own insurance for loss to building contents and business interruption.

The first lawsuit, seeking damages for the destruction of the building, was instituted by the building owners on January 25, 1961. The defendants were Minneapolis Gas Company (here-

after Minnegasco) and A. M. Hubbard Plumbing & Heating, Inc. (hereafter Hubbard), the same defendants as in the present action, who were engaged in converting the building's heating system to change from propane gas fuel to interruptible gas service from Minnegasco. Plaintiff owners alleged that the fire was caused by a leak in a certain heater as a result of the defendants' negligence in its installation. Defendants shortly thereafter initiated a third-party action against Margo-Kraft for indemnity, each alleging that Margo-Kraft was alone responsible for the destruction of the building.

The first lawsuit came to trial on January 6, 1964, and concluded on January 27, 1964. The jury returned a special verdict, by which it found, in answer to the single question, that the fire was not caused by the escape and explosion of gas from the stated unit heater. On the basis of this verdict, adverse to the owners' theory of the action, the trial court ordered judgment for defendants as to the owners' claim and in favor of Margo-Kraft on the third-party claims. The trial court later dismissed plaintiffs' motion for new trial for lack of prosecution, and no appeal was taken from the resulting judgment for defendants.

The second action, subject of this appeal, was commenced by Margo-Kraft against the same defendants, Minnegasco and Hubbard, on July 8, 1964.[1] Margo-Kraft's action was to recover damages for the loss of the building contents and loss of business as a result of destruction to the building. Margo-Kraft in this second action, as stipulated by the parties, raised the identical issue of negligence asserted by the owners against the defendants in the first action and made no claim that any different testimony would be introduced on that issue. In the first action the position of both plaintiff owners and Margo-Kraft was that defendants Minnegasco and Hubbard negligently caused the fire, neither of them asserting that there was any cause other than in a spec-

---

[1] The owners were additional defendants in the second action but were later dismissed by stipulation.

ified unit heater negligently installed and serviced by those defendants; neither asserted that Margo-Kraft was in any way responsible.

The doctrine of collateral estoppel is less difficult to state than to apply. In Lustik v. Rankila, 269 Minn. 515, 520, 131 N. W. 2d 741, 745 (1964), 50 Minn. L. Rev. 523, we followed the opinion in Bernhard v. Bank of America, 19 Cal. 2d 807, 813, 122 P. 2d 892, 895 (1942), in which Mr. Justice Traynor stated that in determining the validity of a plea of res judicata three questions are pertinent:

"* * * Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

The focus of this appeal is solely on the third question: Was Margo-Kraft a party *or* in privity with a party to the prior adjudication?

■ We decline to hold that Margo-Kraft was collaterally estopped as a party to the first action. We are not fully persuaded that Margo-Kraft's status as a third-party defendant in the first action, appearing only by answer and without making a counterclaim against defendants, made it an adverse party. It was not, as we held in House v. Hanson, 245 Minn. 466, 72 N. W. 2d 874 (1955), required to plead a counterclaim against defendants under the compulsory counterclaims provisions of Rule 13.01, Rules of Civil Procedure. A comparable, although not completely parallel, situation was presented in Bunge v. Yager, 236 Minn. 245, 52 N. W. 2d 446 (1952), 36 Minn. L. Rev. 983, where in a personal injury action by an injured plaintiff against codefendants, each of the defendants claimed by answer that the other was negligent but did not file a cross-claim against the other. We there held that the judgment in favor of the plaintiff against both defendants did not preclude a later personal

injury action by one of the defendants against the other, because their rights and liabilities were not expressly put in issue in the first action by a cross-claim or other adversary pleadings. A fortiori, Margo-Kraft and the defendants in the first action were not adversaries on the issue of defendants' negligence simply by virtue of Margo-Kraft's status as a third-party defendant. Any contention that the adversary issue was litigated by consent need not be considered in view of our disposition of the claim that Margo-Kraft was otherwise in privity with the original plaintiffs.

■ We do hold that Margo-Kraft was in such practical privity with the parties plaintiff in the first action as to be collaterally estopped by the jury's adverse determination on the issue of defendants' alleged negligence.

There is no prevailing definition of privity which can be automatically applied, we wrote in McMenomy v. Ryden, 276 Minn. 55, 58, 148 N. W. 2d 804, 807 (1967), so we must carefully examine the circumstance of each case. Although there is no precise test of "privity," it is, as stated in Restatement, Judgments, § 83, *Comment a,* "a word which expresses the idea' that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Those in privity would include, according to the Restatement, "those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; successors in interest to those having derivative claims * * *." We conclude on this full record, as did the trial court, that Margo-Kraft was no stranger to the first action and that, from start to finish, Margo-Kraft demonstrated—by a controlling participation and active self-interest in litigating the sole issue of defendants' causal negligence—that it was, in a most practical sense, a privy of the original plaintiffs and their insurers.

This mutuality of interest was evidenced from the outset. The

building owners, although the only plaintiffs of record, did not themselves retain the law firm which initiated and tried their claim. One of the owners, Beim, testified that Mr. Morris Margolis, who was president and principal owner of Margo-Kraft, "was the one who got the attorneys and so forth and I cooperated with him * * *." The law firm's ledger sheet identified Margo-Kraft as its client and Minnegasco as the adverse party. The building insurer and most, if not all, of the several companies which insured Margo-Kraft were committed to paying the fees and expense of the litigation, Margo-Kraft's obligation to share in them being contingent only upon a successful recovery.

The active participation, if not a shared control, is equally manifest in the trial of the case. Before instituting the original action, the law firm wrote a letter to the several insurers of the owners' and Margo-Kraft's interests, stating:

"We are considering the possibility of either instituting suit on one of the claims or also suing a pilot case which might involve only a small claim for damages. We would appreciate your advice as to whether one of the claims is sufficiently close to settlement so that it can be used as the first item of litigation with, of course, the results to inure to the benefit of all the claims. We would also like the authority of all the companies involved to institute a test case on behalf of all concerned. It would, of course, be understood that the expense involved would be distributed among the various companies on the basis of their respective interests. We will await hearing from the companies involved."

Trial counsel in the case admitted that he brought it on behalf of all the companies concerned, not just those which had insured the owners' interests.

One of the plaintiff owners, Beim, testified that the only time he saw the attorneys that represented him was just before the trial, and it is undisputed that it was in court on only 1 day, at which time he took the stand as a witness for about 15 minutes.

Margolis, on the other hand, was present every day of the trial, only partially explained by his role as a "key witness" and "the only alive client [plaintiffs] had who had any direct knowledge of what happened." Both plaintiff owners and third-party defendant, Margo-Kraft, were represented by common counsel, and their common claim—that the principal defendants alone were causally negligent—was stated in one closing argument.

At the conclusion of the trial in the first action, the jury's verdict having been for defendants, both the owners *and* Margo-Kraft moved for a new trial—at Margo-Kraft's request. The extraordinary motion for a new trial by a victorious litigant was explained by the plaintiffs' counsel in these words:

"* * * We recognized the existence of a responsibility, having appeared as attorneys for Margo-Kraft as a third-party defendant and also having accepted a retainer, and we felt constrained to and we did advise [Mr. Margolis] that there was the possibility that it might be claimed that his involvement or Margo-Kraft's involvement as a third-party defendant would enable the defendants in the action to contend that there was either a collateral estoppel or an estoppel by verdict which would preclude a Margo-Kraft claim, and in order to protect that situation, consideration ought to be given by whatever attorney he did select to the possibility of proceeding with a motion for a new trial in the main action, the first action."

This motion was later dismissed by the trial court for lack of prosecution, and Margo-Kraft subsequently commenced the second action with other counsel obtained by the original counsel.

The objective of this multiplicity of actions was astute and calculated: Margo-Kraft anticipated that a result favorable to the owners would inure to the benefit of its own claims against the same defendants.[2] It had, in all these circumstances, no less

---

[2] Whether a favorable verdict for the owners would have permitted Margo-Kraft to invoke the privilege of collateral estoppel offensively is, of course, not before us. See, Restatement, Judgments, § 84; Currie,

than in Thill v. Modern Erecting Co. 284 Minn. 508, 170 N. W. 2d 865 (1969), the real incentive and full opportunity to have defendants' negligence determined, and the sole basis for its own claim—that the explosion and fire resulted from the negligence of these defendants in the installation and service of gas to a particular unit heater—was determined. As the trial court observed, it gambled and lost. We are persuaded that one who individually or in cooperation with others so controls an action in advancing his own interests has had his day in court and, in justice, should be bound by the adjudication. See, Restatement, Judgments, § 84; Note, 65 Harv. L. Rev. 818, 856.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

*Mutuality of Collateral Estoppel: Limits on the Bernhard Doctrine,* 9 Stanford L. Rev. 281.