**Evan BALASURIYA, Appellant,**

**v.**

**Jeffrey BEMEL, d/b/a Triple B Investments, et al., Respondents.**

**No. CX–99–2190.**

Court of Appeals of Minnesota.

Sept. 26, 2000.

Review Denied Nov. 21, 2000.

Brian F. Kidwell, Leonard O'Brien Wilford Spencer & Gale, Ltd., St. Paul, for appellant.

William L. Moran, Nancy A. Proffitt, Murnane, Conlin, White & Brandt, St. Paul, for respondents.

Considered and decided by
SHUMAKER, Presiding Judge,
ANDERSON, Judge, and PARKER,
Judge.*

## OPINION

G. BARRY ANDERSON, Judge

The present case is a culmination of a number of state and federal court proceedings between landlord/respondent Triple B Investments, tenant/appellant Evan Balasuriya and his corporation, Sri Lanka Curry House, Inc. On appeal, Balasuriya challenges the determination that Triple B acquired a tenancy interest in the lease, the dismissal of his claims for wrongful exclusion and conversion, and the distribution of funds paid into court. Because the district court did not err by determining Triple B's status and did not err by dismissing Balasuriya's claims, we affirm in part. Because the district court erred by awarding Triple B rent, we reverse in part and remand.

## FACTS

Appellant Evan Balasuriya is the president of Sri Lanka Curry House, Inc. ("the corporation"), a restaurant in Minneapolis. In 1992, the corporation leased a floor of a building from respondent Triple B Investments for the purpose of opening its restaurant. The lease names as tenants "Evan and Heather Balasuriya, jointly and severally, D/B/A SRI LANKA CURRY HOUSE, INC, a Minnesota Corporation ('Lessee')." The original lease period was three years. The corporation would later exercise an option extending the lease through April 30, 1999.

From 1994 through 1996, the parties had a number of disputes resulting in unlawful detainer actions. Ultimately, the parties entered into a settlement agreement that altered some of the terms of the lease. The agreement was signed by Evan Balasuriya as "Lessee—Sri Lanka Curry House, Inc. and Evan Balasuriya, individually."

In 1997, the corporation was the subject of a reorganization proceeding under Chapter 11 of the Bankruptcy Code. The corporation moved to assume the unexpired lease in order to prevent the lease from terminating. The bankruptcy court granted the corporation's motion, but noted that Balasuriya remained contractually obligated as set forth in the lease and settlement agreement. In April 1998, the bankruptcy court converted the case to a Chapter 7 proceeding and ordered that the corporation cease operation of the restaurant. On April 27, 1998, the bankruptcy court ordered that all locks on the leased premises be changed and that the corporation's assets be seized.

Eventually, the trustee sought to sell the assets of the corporation, including its interest in the lease. The trustee filed a notice of sale indicating that Balasuriya had offered to buy the assets for $5,000. Triple B filed an objection to the sale and, thereafter, a bidding competition ensued. Balasuriya's highest bid for the assets was $24,500. That was also the highest cash bid. Triple B's last bid, which included credit for a waiver of certain claims, was $25,000. On May 21, 1998, the bankruptcy

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

court confirmed the sale of assets to Triple B.

Balasuriya filed a complaint in state district court asserting claims against Triple B for breach of contract, conversion, wrongful exclusion, defamation, and tortious interference with prospective business relations. Triple B made a motion for partial summary judgment, essentially seeking a determination that Balasuriya had no interest in the leasehold. Balasuriya responded with a motion for the return of possession of the leased premises and personal property. On October 26, 1998, the district court issued an order denying Triple B's motion and denying Balasuriya's motion with respect to return of the personal property. The court ruled that Balasuriya was an individual tenant under the lease and settlement agreement. The court noted that, by virtue of the bankruptcy sale, Balasuriya became a co-tenant with Triple B. The court also recognized that there could be inherent difficulties in decision-making as to how the property should be utilized.

Triple B subsequently filed a motion for a partition by sale. Because Balasuriya had not been allowed access to the property by Triple B, he made a motion to be given keys to the premises. On December 7, 1998, the district court issued an interim order directing Triple B to provide Balasuriya with keys and unrestricted access to the property. Although Balasuriya was given access to the property, Triple B continued to prohibit him from operating his restaurant. On February 9, 1999, the district court ordered a partition sale of the leasehold. Eventually, approximately $60,000 was paid into court as proceeds from the sale of the leasehold and other property.

Triple B moved for summary judgment on all of Balasuriya's claims. The district court granted the motion in part, dismissing all of the claims except Balasuriya's claim for conversion of his personal property. A few days later, the district court dismissed the conversion claim as well.

Balasuriya filed a motion seeking distribution to himself of half of the proceeds paid into court. Later, Balasuriya filed a second motion for distribution claiming entitlement to all of the funds and, for the first time, arguing that the sale of the corporation's interest in the lease to Triple B was invalid. Triple B asserted a claim against the deposited funds for unpaid rent, utility bills, and attorney fees. In response to an objection by Balasuriya as to the procedural propriety of the claims, the district court granted Triple B leave to amend its complaint. Balasuriya's former and current attorneys also filed motions seeking adjudication of their liens against the escrowed funds.

On August 26 and November 8, 1999, the district court issued orders distributing the sale proceeds. The vast majority of the funds were distributed to Triple B. The court also ordered that the attorneys' liens attached only to the amount awarded to Balasuriya.

## ISSUES

I. Did the district court err by concluding that Triple B had purchased the corporation's interest in the lease?

II. Did the district court err by dismissing Balasuriya's claims for wrongful exclusion and conversion?

III. Did the district court err in its distribution of funds?

## ANALYSIS

### I.

Balasuriya argues that Triple B was never validly assigned the corporation's interest in the lease and, thus, never had co-tenant status. More specifically, Balasuriya contends that the bankruptcy trustee did not properly assume the corporation's lease interest, a prerequisite to assigning that interest to Triple B under the Bankruptcy Code. In his brief, Balasuriya develops at length the law relating to assumption of unexpired leases under the

code. A detailed examination of bankruptcy principles is unnecessary and inappropriate in this appeal, however, because the issue is controlled by res judicata and collateral estoppel.

■ Res judicata prevents relitigation of all claims actually litigated or which could have been litigated ·in a previous action. *Mattson v. Underwriters at Lloyds of London,* 414 N.W.2d 717, 719 (Minn.1987). Issues actually litigated and necessarily determined in a prior action are barred under the doctrine of collateral estoppel. *Loo v. Loo,* 520 N.W.2d 740, 744 n. 1 (Minn.1994). The doctrines of res judicata and collateral estoppel apply to court orders, as well as judgments, when they are final and subject to appeal. *Nelson v. Auman,* 221 Minn. 46, 48–49, 20 N.W.2d·702, 704 (1945).

■ The assignment of the corporation's leasehold interest to Triple B was confirmed by an order of the bankruptcy court and was not appealed. A confirmed sale in bankruptcy transfers legal and equitable title to the purchaser. *BAACT Corp. v. Executive Aero, Inc.,* 312 Minn. 143, 147, 251 N.W.2d 107, 109 (1977). A party may not collaterally attack an order of a bankruptcy court confirming a sale by the trustee. *Id.* Counsel for Balasuriya, who did not represent him in the bankruptcy proceedings, has marshaled a thorough and detailed critique of the bankruptcy proceedings here, particularly the problems associated with the bid ultimately accepted by the bankruptcy court. Unfortunately·for Balasuriya, in the present case, the district court properly concluded that Balasuriya's arguments regarding the invalidity of the assignment constituted an improper collateral attack on the bankruptcy court's confirmation order. The bankruptcy court necessarily determined that the assignment was valid and, since Balasuriya ·apparently elected against an appeal in the bankruptcy proceedings, Balasuriya cannot now argue that it was not.

■ Balasuriya argues that collateral estoppel does not apply because his role during the bankruptcy proceedings was as an unsuccessful bidder, not a party. But the doctrine of collateral estoppel applies not only to parties to a prior action, but also to their privies. *See Reil v. Benjamin,* 584 N.W.2d 442, 445 (Minn.App.1998) (person in privity with a party to a prior action collaterally estopped), *review denied* (Minn. Nov. 17, 1998). Privity must be determined under the individual facts of each case. *Johnson v. Hunter,* 447 N.W.2d 871, 874 (Minn.1989). In the context of res judicata, privies are nonparties who are so connected with the litigation that the judgment should determine their interests as well as those of the actual parties. *Denzer v. Frisch,* 430 N.W.2d 471, 473 (Minn.App.1988). Privies include nonparties who control an action and "those whose interests are represented by a party to the action." *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.,* 294 Minn. 274, 278, 200 N.W.2d 45, 48 (1972) (citation omitted).

As a co-tenant, Balasuriya was in privity with the corporation, at least with respect to the sale of the leasehold in the prior action. His interests were clearly aligned with those of the corporation. Moreover, as president of the corporation, he generally controlled the litigation. Simply stated, Balasuriya was so connected with the bankruptcy that the proceedings should bind him as well. · *See Towle v. Boeing Airplane Co.,* 364 F.2d 590, 593 (8th Cir. 1966) (controlling stockholders, directors and officers in corporation were sufficiently connected with the corporation to support a finding of privity). Under these circumstances, we cannot allow Balasuriya to collaterally challenge the bankruptcy proceedings solely because he was not an actual party to the action.

## II.

■ Balasuriya challenges the grant of summary judgment on his claim for wrongful exclusion. In reviewing the

grant or denial of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 112 (Minn.1992). The court must view the evidence in the light most favorable to the party against whom judgment was granted. *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn.1994).

The district court concluded that Balasuriya and Triple B were co-tenants.[1] Accordingly, Balasuriya contends that he was wrongfully excluded from the premises, first, by being allowed no access for a period and, second, by being prohibited from operating his restaurant after he had been allowed access. The circumstances of this case, where a landlord purchases a co-tenant's leasehold interest and becomes a co-tenant itself with interests completely adverse to the other tenant, are unique.

The district court noted that Triple B's exclusion of Balasuriya from April 27, 1998 through June 5, 1998 (the close of bankruptcy proceedings), was not "wrongful" because it was authorized by the bankruptcy court order. The court implied that the exclusion of Balasuriya may have been wrongful from June 5 to December 7, 1998, the date of the court-ordered access. Nevertheless, the court ruled that Balasuriya had failed to establish damages because Triple B, as a co-tenant as opposed to lessor, was entitled to prevent Balasuriya from operating his restaurant on the premises.

The supreme court has recognized that "each cotenant has at all times the right to enter upon and enjoy every part of the common estate." *Petraborg v. Zontelli*, 217 Minn. 536, 540, 15 N.W.2d 174, 177 (1944). Citing *Petraborg*, Balasuriya argues that he was entitled, as a co-tenant, to operate his business on the leased property. But a co-tenant is not entitled to

exclude or impair the rights of other co-tenants. *Id.* The operation of the restaurant would have effectively excluded Triple B and impaired its right as co-tenant. We conclude that Triple B, as a co-tenant, was entitled to prohibit Balasuriya from operating the restaurant and that Balasuriya has no claim for damages as far as the potential loss of income resulting from the prohibition. As we explain below, however, the exclusion of Balasuriya has important ramifications on Triple B's ability to demand rent.

■ Balasuriya also argues that the district court erred by granting summary judgment in favor of Triple B on his conversion of personal property claim. There is no dispute that Triple B refused to allow Balasuriya to remove personal property from the premises. But the lease, agreed to by Balasuriya, provides that, in the event of a failure to pay rent, the lessee could not remove property from the premises. Given Balasuriya's failure to pay rent, Triple B's refusal to allow removal of the property was justified and did not constitute conversion. *See Naegele Outdoor Advertising, Inc. v. Minneapolis Community Dev. Agency*, 551 N.W.2d 235, 238 (Minn.App.1996) (where possession is held through proper legal channels a conversion claim will not lie).

### III.

■ Balasuriya argues that the district court should not have allowed Triple B to amend its pleadings to include counterclaims for the recovery of Balasuriya's financial obligations to Triple B as lessor. The district court should grant leave for a party to amend its pleadings if justice so requires and the other party will not be prejudiced. *Smith v. Woodwind Homes, Inc.*, 605 N.W.2d 418, 424 (Minn.App.2000). The decision to allow amendment rests within the wide discretion of the trial court

---

1. Because Triple B has not challenged this determination, we do not analyze this point

further and do not disturb the court's ruling.

and will not be reversed absent an abuse of that discretion. *Dennis Simmons D.D.S., P.A. v. Modern Aero, Inc.*, 603 N.W.2d 336, 338 (Minn.App.1999).

The parties' relative obligations were at issue throughout the case. Moreover, Balasuriya did not provide any reason to the district court why he would be prejudiced by the amendment and has also failed to establish prejudice on appeal. *See Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (to prevail on appeal, appellants must show both error and that error caused prejudice); Minn. R. Civ. P. 61 (harmless error to be ignored). The district court did not abuse its discretion in allowing the amendment of the pleadings.

Balasuriya next argues that, even if Triple B prevailed on its counterclaims, it cannot be awarded its damages from the sale proceeds that were paid into court. But there is no authority for the proposition that funds paid into court by both parties cannot be distributed according to the respective claims of the parties.[2]

 We nevertheless conclude that the district court erred in its distribution of the funds. The district court awarded Triple B rent for periods in which Balasuriya was excluded from access to and use of the premises. The district court's rationale was that Balasuriya was excluded by Triple B in its capacity as co-tenant and that Triple B could still demand rent under its landlord status, as if it were a separate entity. The district court's analysis is neither tenable nor fair, but a legal fiction that disregards the true nature of Triple B's status. We therefore hold that when a landlord, who is also a co-tenant, excludes his co-tenant from access to the leased premises or grants access but refuses to allow the co-tenant to engage in the only permissible use of the premises,

the landlord/co-tenant cannot also demand rent. Because the district court erred by awarding rent, we reverse and remand.

### DECISION

The district court correctly concluded that Triple B had acquired a tenancy interest in the lease and did not err by dismissing Balasuriya's claims for wrongful exclusion and conversion. The district court, however, erred by awarding Triple B rent.

**Affirmed in part, reversed in part and remanded.**

---

2. Balasuriya also argues that the liens of his attorneys have priority over Triple B's claims. Balasuriya's argument on this point is incomprehensible, lacks any citation to legal authority, and we decline to address it. *See State v.*

*Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn.App.1997) (assignment of error based on mere assertion and not supported by argument or authority is waived).