Connie CROSSMAN, as Trustee for the
Next of Kin of Richard Crossman,
deceased, Respondent,

v.

Michael S. LOCKWOOD,
et al., Appellants.

No. A05–1372.

Court of Appeals of Minnesota.

April 18, 2006.

Kelly A. Jeanetta, Miller O'Brien, Minneapolis, MN, for respondent.

Timothy R. Murphy, Stephen M. Warner, O'Neill & Murphy, L.L.P., St. Paul, MN, for appellants.

Considered and decided by SHUMAKER, Presiding Judge; HALBROOKS, Judge; and CRIPPEN, Judge.*

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

SHUMAKER, Judge.

In this wrongful-death action, the district court denied appellants' summary-judgment motion premised on the contention that a verdict favorable to appellants in a prior subrogation action by respondent's decedent's insurer collaterally estops respondent from relitigating causal negligence in this lawsuit. The court certified as important and doubtful the question of whether respondent or respondent's decedent was in privity with the insurer in the subrogation action so as to make collateral estoppel applicable. We answer the question in the negative.

## FACTS

While Richard Crossman Sr. was driving his car, it collided with a dump truck that appellant Michael Lockwood was driving during the course of his employment by appellant Simonson Construction, Inc. Crossman was injured and his car was damaged.

Crossman collected collision-insurance proceeds from his automobile insurer, Auto–Owners Insurance Co., for the damage to his car. About a year after the accident, he died, and medical evidence relates the accident as a contributing cause of his death.

Without knowledge of Crossman's death, and without his prior consent, Auto–Owners started a subrogation action against Lockwood and Simonson for the recovery of its collision-insurance payment to Crossman and Crossman's deductible amount of $500. Later, Auto–Owners voluntarily dismissed Crossman and his deductible claim from the subrogation lawsuit.

Before his death, Crossman retained a law firm to represent him in a possible claim against Lockwood and Simonson. After his death, his surviving spouse, Connie Crossman, was appointed trustee for the next-of-kin to prosecute a wrongful-death action against Lockwood and Simonson, and the law firm retained an accident reconstructionist, Roger Burgmeier, for that lawsuit.

In the meantime, Auto–Owners' subrogation lawsuit was pending, and Connie Crossman's attorneys sought to monitor it because the liability issue was the same as that in the wrongful-death case. Lockwood and Simonson's attorneys opposed any formal or informal involvement of the Crossman lawyers in the subrogation action. Nevertheless, the Crossman lawyers were able to obtain some information about the matter from Auto–Owners' counsel, attended and participated in the depositions of Connie Crossman and Richard Crossman Jr., provided Auto–Owners' counsel with Burgmeier's accident-reconstruction report, and attended the subrogation trial as spectators. The Crossman lawyers were not permitted to participate in any other aspect of the subrogation case, and there is no evidence that they had any role in the litigation procedures or strategies in that case.

In the subrogation trial, Auto–Owners attempted to establish Lockwood's negligence through cross-examination of Lockwood and Lockwood's accident reconstructionist and through testimony by Connie Crossman and Richard Crossman Jr. The latter two individuals did not see the accident occur. Auto–Owners did not use Burgmeier's testimony, even though the district court had ruled in limine that such testimony was admissible.

In his report, Burgmeier described the accident-reconstruction methods he had used and concluded that "[t]he sole cause of this collision was the failure of Mr. Lockwood to maintain a proper lookout and maintain proper control of his vehicle.

Had he done so this collision would have been avoided."

Lockwood, the only surviving witness to the accident, testified that Crossman Sr. purposely swung his car into the path of his truck as he was trying to go around Crossman's car in the oncoming traffic lane.

The jury found both Lockwood and Crossman Sr. negligent but determined that Crossman's negligence was the sole cause of the collision.

When Connie Crossman commenced the instant wrongful-death action, Lockwood and Simonson moved for summary judgment on the ground that she had been in privity with Auto–Owners in the subrogation action and that collateral estoppel precluded the relitigation of the issue of causal negligence.

The district court denied the summary-judgment motion and ruled that there was no collateral estoppel bar to the relitigation of the causal-negligence issue. The court noted that the subrogation action had been commenced without Crossman Sr.'s knowledge and he was not given the opportunity to consult with his insurer before that lawsuit was started; the trustee was not consulted during the pendency of the subrogation case; neither the Burgmeier report nor his testimony was presented as evidence in the subrogation trial; although Connie Crossman and Richard Crossman Jr. testified, their testimony was limited and they were not given a chance to tell their whole story; and the Crossman lawyers were not allowed to attend pretrial motions, participate in voir dire, receive discovery, cross-examine witnesses, or consult with Auto–Owners' counsel regarding what witnesses to call or what trial strategy to use.

The court thereafter certified as important and doubtful the following question:

Whether privity exists between the [trustee] in the instant action and . . . Auto–Owners Insurance Co., in a prior action involving the same operative facts such that application of the doctrine of collateral estoppel is appropriate.

## ISSUE

After paying collision-insurance proceeds to its insured as a result of a two-vehicle accident, the insurer, without the consent, joinder, or participation by the insured, brought a subrogation action against the driver of the other vehicle and his employer. The jury found causal negligence only against the insured, who had died before the subrogation trial, allegedly from injuries he suffered in the accident.

Was the decedent or decedent's trustee in privity with the insurer in the subrogation action so that collateral estoppel bars the relitigation of causal negligence in a wrongful-death lawsuit?

## ANALYSIS

On review of a question certified as important and doubtful after the denial of a summary-judgment motion, "we review the record to determine whether a genuine issue of material fact exists and whether the law was correctly applied." *Murphy v. Allina Health Sys.*, 668 N.W.2d 17, 20 (Minn.App.2003), *review denied* (Minn. Nov. 18, 2003). Whether collateral estoppel applies is a mixed question of law and fact subject to de novo review. *Falgren v. State Bd. of Teaching*, 545 N.W.2d 901, 905 (Minn.1996).

There is no material dispute about the underlying facts, although the parties differ as to the significance of those facts in answering the certified question.

The application of collateral estoppel so as to preclude relitigation of an

issue depends on the answers to four questions:

1. Is the issue to be precluded identical in both actions?
2. Was there a final judgment on the merits in the prior action?
3. Was the party against whom collateral estoppel is asserted either a party in the previous action or in privity with a party to that action?
4. Did the party against whom estoppel is asserted have a full and fair opportunity to be heard on the issue in question in the previous action?

*Ellis v. Minneapolis Comm'n on Civil Rights,* 319 N.W.2d 702, 704 (Minn.1982).

■ The first two questions are undisputed and must be answered in the affirmative. There was a final judgment on the merits in the subrogation action, which included the identical issue of causal negligence in both that action and the present lawsuit. It is also undisputed that neither Richard Crossman Sr. nor Connie Crossman, as trustee, was a party to the subrogation action. But Lockwood and Simonson contend that the Crossmans were in privity with Auto–Owners in the subrogation case.

■ The Minnesota Supreme Court has stated that "[t]here is no prevailing definition of privity which can be automatically applied. . . ." *Margo–Kraft Distribs., Inc. v. Minneapolis Gas Co.,* 294 Minn. 274, 278, 200 N.W.2d 45, 47 (1972). Thus, the circumstances of each case must be examined to determine the nature and extent of the relationship between a formal party and the person alleged to have been in privity with that party. *Id.* The court gave examples based on the Restatement, Judgments, § 83, cmt. a: "Those in privity would include, according to the Restatement, 'those who control an action although not parties to it . . .; those whose interests are represented by a party to the action . . .; successors in interest to those having derivative claims. . . .'" *Margo–Kraft Distribs.,* 294 Minn. at 278, 200 N.W.2d at 47–48.

■ This court has held that the "rationale behind the requirement of privity is closely associated with the fourth requirement of *Ellis,* thus effectively merging consideration of the two." *Miller v. Northwestern Nat'l Ins. Co.,* 354 N.W.2d 58, 61 (Minn.App.1984). Therefore, the party to be estopped "must have its interests sufficiently represented in the first action so that the use of collateral estoppel is not inequitable." *Id.* (citation omitted). A person's interests are sufficiently represented in an action "where the record demonstrates controlling participation and active self-interest in the litigation." *Brunsoman v. Seltz,* 414 N.W.2d 547, 550 (Minn.App.1987) (citation omitted), *review denied* (Minn. Jan. 15, 1988).

The record does not reveal that the Crossmans had any controlling participation or active self-interest in the subrogation action. The Crossman lawyers did not participate in any aspect of the subrogation case except the depositions of Connie Crossman and Richard Crossman Jr. And this was in the role of assisting their clients in understanding questions and providing clear answers. Nor did the Crossmans or their lawyers have any control over anything that occurred in the subrogation case.

But the most telling fact that reveals the lack of sufficient representation of the Crossmans in the subrogation action is the handling of the liability issue. Auto–Owners presented no affirmative evidence as to the occurrence of the accident. Its only favorable eyewitness had died. Connie Crossman heard a crash but did not see the accident happen. Richard Crossman Jr. was inside his house and did not see

the accident happen. Only Burgmeier, the accident reconstructionist, had affirmative evidence favorable to the Crossman theory of liability, and Auto–Owners chose not to present that evidence in its $3,937.86 subrogation lawsuit.

On the other hand, Lockwood and Simonson presented the testimony of Lockwood—then the only eyewitness—and of an accident reconstructionist, who supported Lockwood's theory of the accident.

Although Auto–Owners had an interest in proving that Lockwood was causally negligent, it chose to forgo the use of the only affirmative evidence available to do so. This is not to fault Auto–Owners for making an economic decision, as Lockwood and Simonson acknowledge in their memorandum in support of their motion in limine to exclude the Burgmeier report and testimony. Rather, Auto–Owners' economic incentive and the Crossman interests in the wrongful-death action are not the same even on the identical liability issue.

On this record, it cannot reasonably and plausibly be said that the Crossmans had any control over any aspect of the subrogation action or that they enjoyed an active self-interest in that matter such that they were sufficiently represented by Auto–Owners. It would be inequitable to apply collateral estoppel to preclude the Crossmans from relitigating the issue of causal negligence in the accident between Crossman Sr. and Lockwood.

Lockwood and Simonson cite *Reil v. Benjamin*, 584 N.W.2d 442 (Minn.App. 1998), *review denied* (Minn. Nov. 17, 1998), as controlling. After an automobile accident with Benjamin, Reil received workers'-compensation benefits. The compensation insurer sought to recover its payments in a subrogation action against Benjamin. Initially, Reil agreed to consolidate his separate claim against Benjamin with the subrogation action, and his attorney signed an agreement on Reil's behalf that stated that the facts, legal issues, witnesses, and documentary evidence would be identical in both matters. The agreement provided that Reil's complaint was to be consolidated with the subrogation case and that the trials would be consolidated as well. Before the trial, Reil chose not to consolidate his claim with the subrogation action. The jury found that Benjamin was not negligent in the subrogation trial and, when Reil sued Benjamin separately, she asserted collateral estoppel because negligence had been determined in the prior action. The district court applied collateral estoppel and granted Benjamin's summary-judgment motion.

Relying on Reil's stipulation that the facts, legal issues, witnesses, and other evidence were identical in both actions, the court of appeals affirmed. The court apparently concluded that the stipulation, coupled with the trial in which presumably all the identical evidence was presented, established privity.

*Reil* does not control here. The liability evidence, which is the key to success in both the subrogation action and the wrongful-death lawsuit, is significantly different, and that is a difference that did not exist in *Reil.*

 Finally, in a footnote in their appellate brief, Lockwood and Simonson discuss the offensive use of collateral estoppel and suggest that the Crossmans' strategy was to wait to see what the outcome of the subrogation action would be, anticipating that Lockwood would be found causally negligent, and then use that determination in the wrongful-death action. The Crossmans' lawsuit, although foreseeable when the subrogation action went to trial, was not sufficiently developed to be presented persuasively. On this record, we cannot

conclude that the Crossmans' strategy was the improper use of offensive collateral estoppel.

## DECISION

The district court correctly ruled that there was no privity between respondent and decedent's insurer in a prior property-damage subrogation action and, thus, the doctrine of collateral estoppel does not apply so as to preclude relitigation of the issue of causal negligence in this wrongful-death lawsuit.

**Certified question answered in the negative.**