*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1724**

Reichel Investments, L.P.,
Appellant,

vs.

Craig A. Reichel,
Respondent.

**Filed July 18, 2016
Affirmed
Jesson, Judge**

Olmsted County District Court
File No. 55-CV-13-3406

Michael Mahoney, Mahoney Lefky LLC, Wayzata, Minnesota (for appellant)

James A. Godwin, Jon S. Swierzewski, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

## UNPUBLISHED OPINION

**JESSON**, Judge

Appellant Reichel Investments L.P. argues that the district court erred by granting summary judgment dismissing its claims against respondent Craig Reichel based on allegations surrounding its purported investment in Coyote Creek LLC, a company controlled by Craig. Because the district court did not err by concluding that principles

of collateral estoppel barred appellant from relitigating its claims that are based on ownership of Coyote and because no genuine issue of material fact exists on appellant's claim of unjust enrichment, we affirm.

## FACTS

Bryan Reichel and respondent Craig Reichel are brothers. Bryan is the principal of Reichel Investments LLC (Investments), an investment company formed in 2002. In 2005, Craig formed Coyote Creek LLC (Coyote), a Rochester outdoor sporting-goods store of which he is president.[1]

In 2007, the brothers agreed that Investments would place funds in Coyote. They dispute whether those funds were meant to purchase an ownership interest or to reflect repayment of a loan that Craig previously made to Bryan. It is not disputed, however, that Investments placed $186,000 in Coyote. The record contains copies of checks from Investments totaling $178,500, which were made out to Coyote in 2007 and 2008. Bryan later alleged that two of those checks, for $25,000 each, were not deposited in Coyote's account and that Craig may have kept those funds for himself.

In 2011, Bryan filed for personal bankruptcy under Chapter 7 of the United States Bankruptcy Code. In his bankruptcy, he listed a receivable due from Coyote, based on a $180,000 receivable held by Investments, of which Bryan was a partner through his living trust.

---

[1] For ease of reference, the brothers will be referred to by their first names. Craig was also president of Bullets & Broadheads LLC and Herdbull Holdings LLC, real estate holding companies that were originally defendants in this action but were dismissed with prejudice by stipulation.

In March 2013, Investments filed a complaint in Olmsted County District Court, alleging that Craig had represented to Bryan that he could purchase 40% of Coyote; that Bryan or Investments had invested in Coyote; that Bryan had guaranteed a bank loan made to Coyote; and that Craig had promised, but failed to pay, a return of 6%. It also asserted that Craig, as sole owner and manager of Coyote, breached fiduciary duties of loyalty, good faith and fair dealing, and full disclosure, and made negligent misrepresentations surrounding an investment in Coyote. It sought equitable relief under the Minnesota Limited Liability Company Act, Minn. Stat. §§ 332B.01 to 322B.975 (2014) and asserted usurpation of corporate opportunity. Finally, it alleged breach of contract or, in the alternative, a claim for unjust enrichment.

In December 2013, Coyote filed for Chapter 11 bankruptcy, and the state-court action was stayed. Investments initially filed a claim in Coyote's bankruptcy based on ownership rights to Coyote, with an addendum noting that it had filed the state-court action and referring to the complaint in that action.[2] But it then moved to withdraw its claim. The bankruptcy judge ordered withdrawal of the claim with prejudice, stating "[t]he court is going to grant the motion to withdraw the claims and they are withdrawn with prejudice so that they can't be re-filed." That determination was not appealed.

In January 2015, the bankruptcy court confirmed Coyote's reorganization plan. The confirmed plan provided that "Craig Reichel will continue to be the president of the Debtor, and its sole shareholder and the sole member of the Debtor's Board of

---

[2] This claim contradicted Bryan's assertion in his personal bankruptcy that the funds provided to Coyote constituted a loan.

3

Governors." It also provided that discharge under the plan "shall constitute a complete waiver, discharge, release and satisfaction of all claims of all creditors and interest holders against the Debtor, to the full extent allowed under bankruptcy law." Investments objected to the plan, arguing that the bankruptcy court's determination may have collateral effect on their proceeding in state court, but the district court overruled the objection.

Craig then moved to dismiss this state-court action, arguing that all of Investments' claims depended on its status as an owner of Coyote, and the bankruptcy court had issued a final decree as to ownership of that entity. Investments, however, argued that its claims related to Craig, not Coyote, and the confirmation plan in bankruptcy was not binding as to Craig personally because he was not a party to that proceeding. In February 2015, the parties stipulated to dismissal of all of the state-court claims against Coyote. The claims alleged against Craig personally, however, were not dismissed.

In August 2015 the district court granted summary judgment in favor of Craig. The district court concluded that confirmation of the bankruptcy plan barred Investments' further effort to collect from Coyote and that the elements of res judicata and collateral estoppel were met, so that Investments' action against Craig was precluded. The district court noted that "[e]very claim [in the complaint] requires a finding that defendant had an ownership interest in Coyote Creek, LLC. Without this, Defendant owes no duty to Plaintiff." This appeal follows.

4

The doctrines of res judicata and collateral estoppel, which are related, are doctrines of finality, which require that there be an end to litigation. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004); *Hauser v. Mealey*, 263 N.W.2d 803, 806-07 (Minn. 1978). After adjudication of a dispute, res judicata, or claim preclusion, prevents either party from relitigating claims arising from the original circumstances, while collateral estoppel, or issue preclusion, prevents relitigation of "specific legal issues that have been adjudicated." *Hauschildt*, 686 N.W.2d at 837.[3]

This court reviews de novo whether principles of res judicata or collateral estoppel apply to preclude litigation. *Care Inst., Inc.-Roseville v. Cty. of Ramsey*, 612 N.W.2d 443, 446 (Minn. 2000). Here the district court concluded that the bankruptcy court's determination, through the plan-confirmation process, that Craig is the "sole shareholder and the sole member of [Coyote's] Board of Governors" was dispositive of each of the claims in Investments' complaint, so that further litigation of these claims was precluded. In our review, we first examine each cause of action asserted in Investments' complaint to determine whether Craig's sole ownership would be dispositive of the claim. We then examine the four prongs of collateral estoppel to determine whether that doctrine applies

---

[3] Although Craig originally sought dismissal of Investments' complaint under Minn. R. Civ. P. 12.02(e), the parties submitted affidavits to the district court, and the district court properly treated the motion as one for summary judgment. Minn. R. Civ. P. 12.02; *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004). We review a district court's summary-judgment order de novo to determine whether there are genuine issues of fact that preclude summary judgment and whether the district court properly applied the law. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010).

to preclude relitigation of the specific issue of ownership. Finally, we address whether Investments' unjust-enrichment claim, which is not premised on an ownership interest by Investments, is precluded by confirmation of Coyote's bankruptcy reorganization.

## I

With certain exceptions not applicable here, the discharge in a Chapter-11 proceeding "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2) (2012). And the bankruptcy court's confirmation of a plan binds any creditor, equity security holder, or general partner in the debtor, whether or not the creditor's claim is impaired under the plan and whether or not the creditor has accepted the plan. 11 U.S.C. § 1141(a) (2012). The parties agreed to dismiss Investments' state-court claims against the debtor, Coyote; these claims were precluded by operation of Coyote's bankruptcy.

Investments maintains, however, that because Craig is not the named debtor in Coyote's bankruptcy, discharge of Coyote's debts is not dispositive of any personal liability Craig may have with respect to claims asserted by Investments. *See* 11 U.S.C. § 524(e) (2012) (providing that generally, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt"). And Investments argues that at least some of its claims do not depend on ownership in Coyote, so that the district court erred in granting summary judgment on

6

these claims. To address this argument, we examine the claims asserted in Investments' complaint.

*Derivative claims*

Investments' complaint asserted, among other allegations, that Craig breached duties of loyalty, good faith and fair dealing, and full disclosure, and participated in usurpation of corporate opportunities. Craig asserts that these are derivative claims, which are not available to Investments without a showing that Investments had an ownership interest in Coyote. A derivative claim is asserted in "an action brought by one or more shareholders or members" of a corporation to enforce a right of the corporation. Minn. R. Civ. P. 23.09. It must be brought on behalf of the corporation and cannot be brought unless the corporation has failed to bring an action to enforce its rights. *Id*. "Derivative suits allow shareholders to bring suit against wrongdoers on behalf of the corporation, and force liable parties to compensate the corporation for injuries so caused." *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn. 2003). Thus, an action for diversion of corporate funds lies with the corporation, not an individual. *Westgor v. Grimm*, 318 N.W.2d 56, 58 (Minn. 1982). Similarly, a cause of action for breach of fiduciary duty alleging that a director or controlling shareholder acted against the interests of the corporation is asserted by a shareholder on behalf of the corporation. *Id*. at 58-59.

Investments' claims of breach of duties of loyalty, good faith and fair dealing, full disclosure, and usurpation of corporate opportunity, are derivative claims. *See id*. Therefore, Investments lacks that standing to assert those claims if it cannot show that it had

7

an ownership interest in Coyote. *See, e.g.*, *PJ Acquisition Corp. v. Skoglund*, 453 N.W.2d 1, 7 (Minn. 1990) (holding that a plaintiff lacked standing to pursue claim for dissipation of corporate assets by directors and officers when claim occurred prior to when plaintiff became a shareholder).

### Section 322B violations and breach of contract

Investments' complaint alleged that Craig, in his capacity as manager or governor of Coyote, "ha[s] acted fraudulently or illegally toward one or more members in their capacities as members or managers or as officers or employees of the Company, including the Plaintiff." The complaint also asserted that the "controlling documents, including the Articles of Formation and company agreements, constitute enforceable contracts between the parties," which "required Craig . . . to act in good faith, to maintain [his] duty of loyalty to [Coyote] *and its members*" and "to obtain *minority interests approval* for any major decisions." (Emphasis added.) Investments argues that these claims are not "tort duty theory" claims, so that the district court's statement that Craig "owes no duty to" Investments does not properly dispose of them. We conclude, however, that in order to succeed on these claims, Investments must show that it had an ownership interest in Coyote.

Managers of limited liability companies (LLCs) must perform their duties in good faith, in a manner they reasonably believe to be in the best interests of the company, and with reasonable care. Minn. Stat. § 322B.69; *see also Hurwitz v. Padden*, 581 N.W.2d 359, 361-62 (Minn. App. 1998) (noting fiduciary duties of partners and stating that principles from partnership law may apply in addressing issues with respect to LLCs),

8

*review denied* (Minn. Aug. 31, 1998). But these duties of care are owed by the manager of the LLC to its owners. *See* Minn. Stat. § 322B.03, subd. 35 (defining an owner of an LLC as a member of the LLC); *id.*, subd. 30 (defining a "member" of an LLC as "a person reflected in the required records of a limited liability company as the owner of some governance rights of a membership interest of the limited liability company"). Therefore, without an ownership interest in Coyote, Investments may not establish a violation of chapter 322B based on Craig's asserted actions.

As to breach of contract, to establish contractual rights to enforce a duty owed to owners of the LLC, Investments would be required to show that it was an owner or a party to a contract establishing or governing the LLC. As the allegations in the complaint acknowledge, this would require a showing of membership or a minority interest in Coyote. A third party who is not an intended beneficiary under a contract is a mere incidental beneficiary and has no right to enforce the contract. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 833 (Minn. 2012). Thus, this claim depends on ownership of Coyote as well.

### *Negligent misrepresentation*

In its complaint, Investments alleged that, to guide its business transactions, Craig negligently misrepresented Coyote's net worth, financial stability, and a certain rate of return on investment, and that Craig failed to furnish financial information or record a membership interest in Coyote. To establish a claim for negligent misrepresentation, a plaintiff must show: (1) that the defendant owes the plaintiff a duty of care; (2) that defendant supplied false information to the plaintiff; (3) that the plaintiff justifiably relied

9

on that information; and (4) that the defendant failed to exercise reasonable care in communicating the information. *Williams v. Smith*, 820 N.W.2d 807, 815 (Minn. 2012).

The Minnesota Supreme Court has noted that, generally, the first required element, a duty of care, exists in certain professional and fiduciary relationships, or "certain special legal relationships in which one party has superior knowledge or expertise." *Id.* at 816. But here, without evidence that Investments was an owner of Coyote or that Craig was acting in a professional or fiduciary relationship with respect to advising Bryan or Investments, a duty of care would not arise regarding any advice Craig may have given in connection with Investments' placing funds in Coyote.

### *Unjust enrichment*

Investments also argues that the district court erred in dismissing its claim against Craig for unjust enrichment, "based on the allegation that . . . Investments did not become an owner and did not get what was promised from Craig." Unjust enrichment is an equitable doctrine. *Caldas*, 820 N.W.2d at 838. "[T]o establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). "[U]njust enrichment claims do not lie simply because one party benefits from the efforts or obligations of others, but instead it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981). Investments' claim of unjust enrichment assumes that Craig unjustly retained funds that

should have gone to purchase an ownership interest in Coyote, but did not. Therefore, unlike its other claims against Craig, the unjust-enrichment claim does not require that Investments have an ownership interest in Coyote.

## II

We next review the district court's conclusion that all of Investments' claims against Craig were barred under principles of collateral estoppel. Collateral estoppel bars a subsequent claim when all of the following prongs are met:

> (1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or was in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.

*Hauschildt*, 686 N.W.2d at 837 (quotation omitted). For collateral estoppel to apply, the issue must also have been contested and directly determined in the prior adjudication. *Id*. at 837-38.[4] When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982). "The normal rules of

---

[4] The Eighth Circuit Court of Appeals employs the following factors to determine whether collateral estoppel applies in a particular case: (1) the party sought to be precluded was a party, or in privity with a party, to the prior action; (2) the issue sought to be precluded is the same as that involved in the prior action; (3) the issue has been actually litigated in the prior action; (4) the issue precluded was determined by a valid final judgment in the prior action; and (5) the determination was essential to the prior judgment. *Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008). The Minnesota federal bankruptcy court has noted that the standards articulated under Minnesota law do "not materially differ from" the standards articulated by the Eighth Circuit. *PLM Lake & Land Mgmt. Corp. v. Duy (In re Duy)*, 484 B.R. 742, 747 (Bankr. D. Minn. 2012).

res judicata and collateral estoppel apply to the decisions of bankruptcy courts." *Katchen v. Landy*, 382 U.S. 323, 334, 86 S. Ct. 467, 475 (1966) (emphasis omitted). We therefore examine the requirements for the application of collateral estoppel in the context of this case.

### *Identical issue in prior adjudication*

For collateral-estoppel purposes, issues are identical when "the issues presented by [the current] litigation are in substance the same as those resolved" in the previous litigation. *Montana v. United States*, 440 U.S. 147, 155, 99 S. Ct. 970, 974 (1979). Investments argues that its claims against Craig personally and those in Coyote's bankruptcy proceeding did not involve the same issues because its state-court claims involve different facts relating to Craig's personal conduct that damaged Investments. But the facts of the two cases need not be identical, as long as any factual differences have no "legal significance" in "resolving the issue presented in both cases." *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172, 104 S. Ct. 575, 579 (1984). Here, although Investments asserts different theories of recovery in its state-law complaint, most of those theories require proof of Craig's ownership of Coyote, which was resolved conclusively in Coyote's bankruptcy. In fact, Investments originally submitted a proof of claim in the bankruptcy proceeding that referred to its state-court complaint. The district court did not err by concluding that this element of collateral estoppel was met.

### *Final judgment on merits*

The district court concluded that this prong of collateral estoppel was satisfied because the bankruptcy court issued a final judgment on the merits. Investments argues

that confirmation of Coyote's bankruptcy plan did not act as a final judgment on the merits with respect to its state-court claims against Craig, who was a non-debtor and not subject to bankruptcy court jurisdiction. But for collateral estoppel to apply here, there need only be a final judgment on the merits in the bankruptcy matter. And when Investments withdrew its claim in the bankruptcy proceeding, the bankruptcy court treated the withdrawal as a voluntary dismissal with prejudice of any unasserted claims against Coyote. "The phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" *Decker v. Washington Mut. Bank (In re Decker)*, 357 B.R. 825, 832 (Bankr. D. Mont. 2007).

### *Same parties or privies*

Investments argues that this element of collateral estoppel was not satisfied because Craig and Coyote were not in privity with each other. Privity recognizes "that a judgment should also determine the interests of certain non-parties closely connected with the litigation." *Reil v. Benjamin*, 584 N.W.2d 442, 445 (Minn. App. 1998), *review denied* (Minn. Nov. 17, 1998). Courts will find privity as to "those who control an action although not parties to it[,]" "those whose interests are represented by a party to the action[,]" and "successors in interest to those having derivative claims." *Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.*, 294 Minn. 274, 278, 200 N.W.2d 45, 47-48 (1972) (quotation omitted). It may also be found when a person is "so identified in interest with another that he represents the same legal right." *McMenomy v. Ryden*, 276 Minn. 55, 58-59, 148 N.W.2d 804, 807 (1967) (quotation omitted). A court determines whether parties

13

are in privity by carefully examining the circumstances of each case. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011).

It is undisputed that Craig had full control over Coyote, and, as Craig points out, the bankruptcy court extended the automatic stay in bankruptcy to claims against Craig personally. *See Miller v. Nw. Nat'l Ins. Co.*, 354 N.W.2d 58, 62 (Minn. App. 1984) (stating that a person who has full control over a corporation is presumed to be in privity with the corporation). The more salient inquiry for collateral-estoppel purposes is whether Investments was a party or in privity in the bankruptcy proceeding. We conclude that it was, under the circumstances of this case. Investments had notice of the bankruptcy case, which determined ownership of Coyote, and originally filed a claim in that matter. The district court appropriately concluded that the element of privity was satisfied.

### Full and fair opportunity to litigate

The district court concluded that Investments had a full and fair opportunity to litigate its claims in bankruptcy court.

> [W]hether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.

*State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (quotation omitted). Here, Investments, which filed a claim in Coyote's bankruptcy but later withdrew that claim, cannot now assert that it lacked a full and fair opportunity to litigate any issues that depended on ownership of Coyote.

14

Investments argues that it was entitled to have its state-court claims heard before a jury, based on *Stern v. Marshall*, 564 U.S. 462, 131 S. Ct. 2594 (2011). In *Stern*, the United States Supreme Court held that a bankruptcy court "lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 503, 131 S. Ct. at 2620. But *Stern* involved the debtor's counterclaim for tortious interference with a gift of inheritance, which was asserted in response to a creditor's bankruptcy claim alleging defamation by the debtor. *Id.* at 470, 131 S. Ct. at 2601. Here, no counterclaims were made by the debtor in response to matters unrelated to Coyote's bankruptcy. Rather, apart from its unjust-enrichment claim, Investments' claims relate to the purported ownership of Coyote's assets and were properly asserted as claims against Coyote's bankruptcy estate. *See, e.g.*, *In re Woods*, 517 B.R. 106, 113 (Bankr. N.D. Ill. 2014) (concluding that *Stern* did not deprive the bankruptcy court of jurisdiction to determine a state-law counterclaim when it was not asserted by the debtor, but involved a claim against the bankruptcy estate). Therefore, we reject Investments' argument that, based on *Stern*, it lacked a full and fair opportunity to litigate those claims.

### Contested and directly determined

Investments does not contest this element of collateral estoppel. We note that when the bankruptcy court deemed Investments' claim to be withdrawn with prejudice, this determination was considered a final judgment on the merits, similar to a default judgment. *See Decker*, 357 B.R. at 832. In general, "the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, . . . unless it

15

can be said that the parties could reasonably have foreseen the conclusive effect of their actions." *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (emphasis omitted) (quotation omitted). But the exception to the general rule has been applied when the party had a full and fair opportunity to defend against allegations, such as fraud, in the bankruptcy proceeding and chose not to do so, *Jones v. Wilson (In re Wilson)*, 72 B.R. 956, 959 (Bankr. M.D. Fla. 1987), or substantially participated in the litigation. *Int'l Strategies Grp., Ltd. v. Pomeroy (In re Pomeroy)*, 353 B.R. 371, 377 (Bankr. D. Mass. 2006). Here, Investments had ample opportunity to participate in the bankruptcy proceeding and did so, filing a claim and contesting confirmation of the bankruptcy plan, before it ultimately decided to withdraw its claim. Therefore, this element was met.

We conclude that the district court did not err by concluding that collateral estoppel precluded litigation of all of Investments' claims that depend on its ownership of Coyote.[5]

### III

Investments also alleged in its complaint that Craig was unjustly enriched by retaining the funds. As discussed above, unlike Investments' other claims, this claim does not depend on ownership of Coyote. We therefore address separately whether the district court erred by granting summary judgment in favor of Craig on the unjust-enrichment claim.

---

[5] Because we conclude that all collateral-estoppel prongs were met with respect to Investments' state-law claims that depend on ownership of Coyote, we do not address the district court's alternative ruling that those claims were precluded by res judicata.

The first requirement of a claim for unjust enrichment is that the plaintiff must confer a benefit on the defendant. *Caldas*, 820 N.W.2d at 838. Here, Investments conferred a benefit on Coyote. Each of the checks provided by Investments and Bryan was made out to Coyote, not to Craig. And the parties agreed to dismiss all claims against Coyote in this action.

If Investments believed that it was entitled to some of Coyote's assets, it had the opportunity to make that claim in Coyote's bankruptcy proceeding. But when it withdrew its claim in that proceeding, that claim was voluntarily dismissed with prejudice. If Investments believes, as it argues here, that Craig misappropriated funds that belonged to Coyote, it should have brought that claim in the bankruptcy proceeding. It did not. When a reorganization plan is confirmed, "the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor." 11 U.S.C. § 1141 (c) (2012). The funds contributed by Investments were "property dealt with by the [bankruptcy] plan," *id*., the bankruptcy court rejected Investments' challenge to the plan, and the discharge in Coyote's Chapter-11 proceeding precludes a subsequent unjust enrichment claim based on those funds. We conclude that the district court did not err by granting summary judgment on the unjust-enrichment claim.

Finally, Investments argues that the stipulation signed by the parties, agreeing that the claims against the other companies would be dismissed, but not the claims against Craig personally, operated as a binding agreement that Craig would not move to dismiss

the claims against him.  But because we affirm the district court's summary judgment, this issue is now moot.

**Affirmed.**